897 F.2d 75
 58 USLW 2520, Fed. Sec. L. Rep. P 94,951,
RICO Bus.Disp.Guide 7430
 Elie OUAKNINE and Lockton Perry Corp., Plaintiffs-Appellants,
v.
Robert A. MacFARLANE, Perry West Associates, MacFarlane
Perry Company, MacFarlane Development Company,
Inc., and Ozzie Greenberg, Defendants-Appellees.
 No. 463, Docket 89-7668.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 20, 1989.
Decided Feb. 26, 1990.
 
 Charles L. Rosenzweig (Geoffrey S. Pope, Rand Rosenzweig Smith & Radley, New York City, of Counsel), for plaintiffs-appellants.
 Dominick D'Alleva, New York City, for defendants-appellees.
 Before OAKES, Chief Judge, PRATT, Circuit Judge, and SAND, District Judge for the Southern District of New York, sitting by designation.
 GEORGE C. PRATT, Circuit Judge:
 
 
 1
 Plaintiffs Elie Ouaknine and Lockton Perry Corp. appeal from a judgment of the United States District Court for the Southern District of New York, John M. Cannella, Judge, that (1) dismissed securities fraud claims, a civil RICO claim under 18 U.S.C. Sec. 1962(c) premised on predicate acts of securities fraud, and a portion of a state-law claim based on fraud, all for failure to sufficiently plead fraud as required by Fed.R.Civ.P. 9(b); (2) dismissed a civil RICO claim under 18 U.S.C. Sec. 1962(a) for failure to state a claim because plaintiffs did not aver injury by reason of defendants' investment of racketeering income in the racketeering enterprise; and (3) dismissed state-law claims for lack of pendent jurisdiction. The two principal issues on appeal are (1) whether the complaint pled fraud with sufficient particularity to withstand dismissal and (2) whether, in order to state a civil RICO claim under 18 U.S.C. Sec. 1962(a), plaintiffs must allege injury in business or property by reason of defendants' investment of racketeering income in an enterprise.
 
 
 2
 We hold that fraud was pled with sufficient specificity with respect to some defendants, and that a civil RICO claim under Sec. 1962(a) must be premised on injury by means of defendants' investment of racketeering income. We therefore affirm in part, reverse in part, and remand for further proceedings.
 
 I. BACKGROUND
 
 3
 On May 28, 1987, plaintiffs Ouaknine and Lockton Perry Corp. (collectively Ouaknine) filed a complaint against Michael Milea, Robert A. MacFarlane, Perry West Associates, the Lockton Corporation, MacFarlane Perry Company, MacFarlane Development Company, Inc., William Jarblum, and Ozzie Greenberg. Count one of the complaint charged all defendants with violating Sec. 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j(b), and rule 10b-5, 17 C.F.R. Sec. 240.10b-5 promulgated thereunder. Count two charged all defendants with violating Sec. 17(a) of the Securities Act of 1933, 15 U.S.C. Sec. 77q(a). Count three charged all defendants with violating 18 U.S.C. Sec. 1962(a) and Sec. 1962(c) of the Racketeer Influenced and Corrupt Organizations Act (RICO). The underlying predicate acts of racketeering activity for the RICO claims were the securities fraud violations alleged in counts one and two, and wire and mail fraud claims that were related to the alleged securities fraud. The complaint also alleged pendent state-law claims against various defendants, including wasting of assets, breach of fiduciary duty, failure to provide required accounting, breach of contract, and conversion.
 
 
 4
 According to the original complaint these violations arose during the course of three transactions: (1) Ouaknine's $500,000 subscription for stock in Lockton Perry Corp. (Lockton Perry), a corporation created for the purpose of investing in a project to rehabilitate and sell cooperative apartments in New York City (the Perry Street project); (2) defendants' procurement of Ouaknine's assent to the sale of all stock of a second corporation, MacFarlane 95th Street Development Corp. (MacFarlane 95th), by false assurances that Ouaknine's $575,000 capital investment in MacFarlane 95th would be repaid in full from the first proceeds of the stock sale; and (3) false representations made by defendants to induce Ouaknine's acceptance, in lieu of cash, of a nonrecourse promissory note secured only by shares in Lockton Perry.
 
 
 5
 Defendants Milea, Lockton Corporation, and Jarblum moved to dismiss the securities fraud counts, the RICO claims based on securities fraud, and a portion of a common law claim, for failure to particularize fraud as required by rule 9(b); they also moved for a more definite statement under Fed.R.Civ.P. 12(e). By order dated June 17, 1988, the district court dismissed all counts premised on fraud for failure to adequately particularize fraud and also granted the motion for a more definite statement with respect to two state-law claims.
 
 
 6
 On July 25, 1988, Ouaknine served an amended complaint, which is the subject of this appeal. By judgment dated June 15, 1989, Judge Cannella again dismissed all claims alleging fraud for failure to satisfy the pleading requirements of rule 9(b). For the purpose of determining whether fraud was pled sufficiently, we assume the truth of plaintiffs' allegations. DiVittorio v. Equidyne Extractive Industries, Inc., 822 F.2d 1242, 1244 (2d Cir.1987); Luce v. Edelstein, 802 F.2d 49, 52 (2d Cir.1986).
 
 A. Perry Street Project
 
 7
 On May 25, 1984, Milea, Jarblum, and MacFarlane solicited Ouaknine to subscribe, for the sum of $500,000, to fifty percent of the common stock of Lockton Perry, a corporation formed as a vehicle for investment in Perry West Associates (Perry West). Perry West is a partnership between Lockton Perry and defendant MacFarlane Perry Company (MacFarlane Perry). Perry West was formed to own, renovate, and sell cooperative apartments located at 155-59 Perry Street in New York City. Ouaknine's $500,000 investment was to be Lockton Perry's sole cash contribution to the Perry Street project.
 
 
 8
 To induce his investment in Lockton Perry stock, Milea, on behalf of Jarblum, MacFarlane, Perry West, and MacFarlane Perry, gave Ouaknine an offering memorandum which contained false representations. Among other representations, the offering memorandum set forth a total construction cost of $2,137,000 for the completed project, a sellout date of September 1, 1985, and a projected profit of approximately $2,495,000. None of these objectives was realized.
 
 
 9
 To further induce Ouaknine's subscription to Lockton Perry stock, Jarblum and Milea also gave Ouaknine the Perry West partnership agreement which provided that Perry West would enter into a construction contract with MacFarlane Development, an affiliate of MacFarlane and MacFarlane Perry, substantially in accord with previous projections. Section 10 of the partnership agreement provided that Perry West would (1) keep full and true books of account; (2) make its books and records available to Ouaknine; and (3) require its accountant to prepare timely annual reports and tax statements. In reliance on these representations, Ouaknine subscribed to fifty percent of the Lockton Perry stock. He then transferred ten percent of his interest to one Gladys Bagley. Ouaknine also entered a shareholders agreement that made Milea chief executive of Lockton Perry and permitted Milea to name two of the corporation's three directors, thereby giving him control of the corporation. Finally, the amended complaint alleged upon information and belief that the representations made in the offering memorandum and partnership agreement were false and misleading and were known by the various defendants to be false and misleading when made.
 
 B. MacFarlane 95th Project
 
 10
 On or about September 18, 1984, Ouaknine, upon the solicitation of Milea and MacFarlane, purchased for $575,000 a twenty-five percent beneficial interest in MacFarlane 95th and in a contract MacFarlane 95th had to purchase the Knickerbocker Hotel in Manhattan, New York. Ouaknine again transferred a portion of his interest in MacFarlane 95th to Bagley. On or about November 7, 1984, MacFarlane, Milea, and Greenberg, an accountant working for MacFarlane, representing themselves as the sole owners of MacFarlane 95th, entered into an agreement for the sale of the stock of MacFarlane 95th for $3,218,000. The purchase price was payable as follows: (1) $500,000 to MacFarlane, Milea, and Greenberg upon execution of the stock purchase agreement; (2) $650,000 to the sellers' law firm, Jarblum Solomon & Fornari, P.C., to be paid on or before December 3, 1984; and (3) the balance to the sellers at closing. On or about December 21, 1984, the stock purchase agreement was amended to reflect, among other changes, a change in the buyer and an increase in the purchase price.
 
 
 11
 To induce Ouaknine's consent to this agreement, MacFarlane, Milea, Jarblum, and Greenberg represented that Ouaknine's and Bagley's $575,000 investment would be returned from the first proceeds on the closing of the stock purchase agreement. Although $1,162,000 was available for distribution at closing, none of those proceeds were delivered to Ouaknine because, according to the complaint, they were diverted to another project involving MacFarlane and Milea. Milea offered Ouaknine instead, $212,500 in cash and the balance of $212,500 by promissory note secured by shares of Milea's Lockton Perry stock; he also promised a full accounting of the sale of the shares of MacFarlane 95th.
 
 C. Nonrecourse Note
 
 12
 The proposal to accept a nonrecourse note in lieu of cash formed the basis of the final fraudulent transaction alleged by Ouaknine. According to the amended complaint, to induce Ouaknine's acceptance of a note backed by Lockton Perry stock in lieu of cash, Milea represented that the Perry Street project was progressing as forecast and the Lockton Perry stock was worth far more than the promissory note amount of $212,500. Ouaknine thereafter asked Jarblum, MacFarlane, Greenberg, and Perry West about the financial status of Lockton Perry and the Perry Street project and all of them represented that the project was progressing as forecast and that Lockton Perry was worth more than the $212,500 amount of the promissory note.
 
 D. Dismissal of Complaint
 
 13
 Defendants Milea, Lockton Corporation, and Jarblum moved to dismiss the amended complaint, arguing that plaintiffs still had not alleged fraud with sufficient particularity. By order of May 23, 1989, the district court dismissed against all defendants the securities fraud counts, the Sec. 1962(c) RICO claim premised on predicate acts of securities fraud, and the portion of the state-law claim based on fraud for failure to plead fraud with the particularity required by rule 9(b). It also dismissed the Sec. 1962(a) RICO claim for failure to state a claim, holding that for purposes of Sec. 1962(a) injury must result from the investment of racketeering income rather than from the predicate racketeering acts. Finally, since all federal claims had been dismissed, the district court dismissed, without prejudice, the remaining state-law claims for lack of pendent jurisdiction.
 
 
 14
 Final judgment was entered in favor of all defendants on June 15, 1989, and Ouaknine appealed. On October 5, 1989, prior to oral argument of the appeal, Ouaknine settled all claims against Milea, Lockton Corporation, and Jarblum. The appeal therefore is before the court with respect only to MacFarlane, Perry West, MacFarlane Perry, MacFarlane Development, and Greenberg.
 
 II. DISCUSSION
 A. Sufficiency of the Pleadings
 
 15
 Fed.R.Civ.P. 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Rule 9(b), however, must be read together with rule 8(a) which requires only a "short and plain statement" of the claims for relief. DiVittorio, 822 F.2d at 1247; Ross v. A.H. Robins Company, Inc., 607 F.2d 545, 557 n. 20 (2d Cir.1979), cert. denied, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); 5 C. Wright & A. Miller, Federal Practice and Procedure Sec. 1298 (1969 & Supp.1989).
 
 
 16
 To pass muster under rule 9(b), the complaint must allege the time, place, speaker, and sometimes even the content of the alleged misrepresentation. See, e.g., DiVittorio, 822 F.2d at 1247; Luce, 802 F.2d at 54; Denny v. Barber, 576 F.2d 465, 469 (2d Cir.1978). Although scienter need not be alleged with great specificity, Beck v. Manufacturers Hanover Trust Co., 820 F.2d 46, 50 (2d Cir.1987), cert. denied, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988); Connecticut National Bank v. Fluor Corp., 808 F.2d 957, 962 (2d Cir.1987); Goldman v. Belden, 754 F.2d 1059, 1071-72 (2d Cir.1985), there must be some factual basis for conclusory allegations of intent. Allegations of scienter are sufficient if supported by facts giving rise to a "strong inference" of fraudulent intent. Beck, 820 F.2d at 50; Connecticut National Bank, 808 F.2d at 962.
 
 1. Circumstances Constituting Fraud
 
 17
 The district court found no infirmity in Ouaknine's pleading of time, place, speaker, and content of misrepresentation with respect to the Perry Street project. We agree that allegations in the complaint sufficiently linked MacFarlane, Perry West, MacFarlane Perry, and Greenberg to representations in the offering memorandum and partnership agreement delivered in connection with the Perry Street project. We have held that reference to an offering memorandum satisfies 9(b)'s requirement of identifying time, place, speaker, and content of representation where, as here, defendants are insiders or affiliates participating in the offer of securities. DiVittorio, 822 F.2d at 1247; Luce, 802 F.2d at 55. With respect to the MacFarlane 95th project and the nonrecourse note, the district court held that the complaint adequately identified the alleged misrepresentations, the maker, and what the defendants hoped to gain from the misrepresentations. Again, we agree that the allegations were sufficient with respect to MacFarlane, Perry West, MacFarlane Perry, and Greenberg.
 
 
 18
 The amended complaint, however, failed to adequately particularize time, place, and content of misrepresentation with respect to defendant MacFarlane Development, the entity affiliated with MacFarlane, which was to undertake construction of the cooperative apartments at the Perry Street location. The amended complaint identifies MacFarlane Development simply as "a New York corporation, [which] is an affiliate of MacFarlane and MacFarlane Perry and undertook the construction of the Perry Street Project", Amended Complaint p 7, and alleges no more about MacFarlane Development. This allegation alone is insufficient to link MacFarlane Development to the misrepresentations in the offering memorandum or partnership agreement. See DiVittorio, 822 F.2d at 1248-49 (even with aid of rule dispensing with requirement of specific connection between insiders or affiliates and fraudulent representations, allegations merely that defendant is an affiliate and contracted to perform work are insufficient to link affiliate with representations in offering memorandum). Because the amended complaint alleges no misrepresentations whatsoever by MacFarlane Development, whether with respect to the Perry Street project, the MacFarlane 95th project, or the nonrecourse note, the district court properly dismissed all fraud counts with respect to MacFarlane Development under rule 9(b).
 
 2. Scienter
 
 19
 Although it found the allegations of circumstances constituting fraud sufficiently particular, the district court nevertheless dismissed the amended complaint because (1) with respect to the Perry Street project, the amended complaint failed to allege sufficient facts to infer that defendants knew that their promissory representations with respect to construction costs were false when made, and (2) with respect to all transactions, it failed to supply an adequate factual basis for the allegations of scienter. We disagree.
 
 
 20
 a. Perry Street Project
 
 
 21
 The complaint adequately alleged knowledge with respect to the misrepresentations in the offering memorandum and partnership agreement about the Perry Street project. In Luce, 802 F.2d at 55-56, we held that although mere allegations of mismanagement are insufficient to state a claim under Sec. 10(b), "[p]lausible allegations that defendants made specific promises to induce a securities transaction while secretly intending not to carry them out or knowing they could not be carried out, and that they were not carried out, are sufficient under Pross [v. Katz, 784 F.2d 455 (2d Cir.1986) ] to state a claim for relief under Section 10(b)". The Luce court then held sufficient claims of scienter based on misrepresentations in an offering memorandum that, inter alia, general partners would make an initial capital contribution of $385,000 and guarantee a $4.5 million construction loan when supported by allegations that the general partners contributed only approximately $80,000 and did not guarantee the loan. Luce, 802 F.2d at 56. See also DiVittorio, 822 F.2d at 1248 (sufficient to allege upon information and belief (1) that offering memorandum's statement that proceeds of offering would be expended as quickly as possible was false because proceeds were never so applied and were never intended to be so applied; and (2) that estimate that property contained approximately 9,260,000 tons of coal was false because mines in fact did not contain nearly that much).
 
 
 22
 Ouaknine's amended complaint alleged that defendants knew at the time they presented the offering memorandum and partnership agreement that specific representations therein were false or made with reckless disregard as to their truth or falsity, Amended Complaint p 23. Allegations of scienter are not subjected to the more exacting consideration applied to the other components of fraud. They are sufficient where, as here, the allegations lie peculiarly within the opposing parties' knowledge and are accompanied by information that raises a strong inference of fraud. Beck, 820 F.2d at 50; see also DiVittorio, 822 F.2d at 1247-48; Luce, 802 F.2d at 54 n. 1. Accordingly, the allegation that defendants knew construction costs would be higher than represented was adequately supported by the following: (1) Perry West and MacFarlane Development never entered into the promised construction contract, although defendants controlled both entities, Amended Complaint pp 7, 21, 23(a); (2) as of April 8, 1986, costs of renovating the Perry Street apartments, represented less than two years earlier in the offering memorandum to total $2,137,000, had already exceeded $7,065,325--more than 300 percent of the represented cost--and the project was still incomplete, Amended Complaint p 23(b); (3) defendants never advised Ouaknine of the overruns or provided him with any amendments to the projections as contemplated by the partnership agreement, Amended Complaint p 17; and (4) the $7,065,325 included over $2 million in wages and salaries not included in the projection of direct costs submitted to Ouaknine, Amended Complaint p 23(b). The allegations that defendants never intended to properly maintain the books, to prepare timely annual reports, and to properly manage the funds of Perry West were also sufficiently grounded: (1) beginning in September 1984, just three months after Ouaknine's subscription, MacFarlane withdrew $1,625,000 from Perry West; (2) in 1985, cash was transferred between Perry West and other entities of MacFarlane and documented only with notations such as "to cover overdrafts"; and (3) Perry West could not produce invoices substantiating overdrafts of thousands of dollars, Amended Complaint p 23(c). See, e.g., Luce, 802 F.2d at 55-56; DiVittorio, 822 F.2d at 1248. It is difficult to imagine how such events could have occurred if the defendants who controlled them had not actually intended to defraud.
 
 
 23
 b. MacFarlane 95th and Nonrecourse Note
 
 
 24
 The complaint also pled a sufficient factual basis for the allegations of scienter with respect to the inducement of Ouaknine's assent to sell his shares in MacFarlane 95th and to accept in lieu of cash a nonrecourse promissory note backed only by Lockton Perry stock. As noted above, factual allegations giving rise to a strong inference that defendants possessed fraudulent intent are sufficient. See, e.g., Beck, 820 F.2d at 50; Connecticut National Bank, 808 F.2d at 962; Goldman, 754 F.2d at 1070; A.H. Robins, 607 F.2d at 558. The amended complaint adequately pled scienter with respect to the inducement of Ouaknine's assent to the sale of shares of MacFarlane 95th by alleging, with supporting documents, that (1) in November and December 1984 defendants negotiated the stock sale by representing to the buyer that they were the sole shareholders of MacFarlane 95th, Amended Complaint p 30; (2) in December 1984 defendants assured Ouaknine that he would receive his $575,000 investment in MacFarlane 95th from the first proceeds of the sale and that the money would be available on January 18, 1985, Amended Complaint p 34; (3) in early 1985 $1,162,000 was available for distribution but Ouaknine received no money from the first proceeds, Amended Complaint p 36; and (4) on or about February 22, 1985, Ouaknine was given $150,000. These facts asserting that Ouaknine was promised his money from the first proceeds of the imminent sale, that the money was available shortly after the promise, but that Ouaknine was not given his share, establish the requisite strong inference that defendants never did intend to pay Ouaknine from the first proceeds.
 
 
 25
 Finally, with respect to the inducement of Ouaknine's acceptance of the nonrecourse note backed by Lockton Perry stock, the complaint alleges that MacFarlane, Greenberg, and Perry West represented that the Perry Street project was progressing as forecast, Amended Complaint p 42, and that they knew these statements to be false, Amended Complaint p 50. Read in the context of Ouaknine's other allegations, see Beck, 820 F.2d at 50, particularly the allegations that defendants knew from the outset that Lockton Perry would experience cost overruns, the complaint establishes a strong inference that defendants consciously misrepresented the value of the Lockton Perry stock in order to induce Ouaknine's acceptance of a less valuable note in lieu of cash.
 
 
 26
 In summary, we reverse the dismissal of the securities claims and the Sec. 1962(c) civil RICO claim for failure to plead fraud with particularity with respect to MacFarlane, Perry West, MacFarlane 95th, and Greenberg. As to MacFarlane Development, we affirm the dismissal of these claims because the amended complaint did not adequately link it to the alleged misrepresentations.
 
 B. Section 1962(a) RICO Claim
 
 27
 The district court dismissed the Sec. 1962(a) RICO claim under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted, holding that Ouaknine had failed to allege any facts demonstrating injury from defendants' investment of racketeering income as required by Sec. 1962(a). Ouaknine contends that the district court erred as a matter of law. He argues that a plaintiff asserting a claim for damages under Sec. 1962(a) need allege injury only from the predicate acts of racketeering, not from defendants' investment of racketeering income. In the alternative, Ouaknine contends that the amended complaint does allege injury by means of defendants' investment of racketeering income. We disagree with both contentions.
 
 
 28
 In determining the requirements for recovery under Sec. 1962(a), we look first to the statutory language. Section 1964(c) authorizes a private cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. Sec. 1964(c) (emphasis added). The relevant violation of Sec. 1962 is subsection (a) which provides:
 
 
 29
 It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity * * * to invest, directly or indirectly, any part of such income, or the proceeds of such income, in the acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
 
 
 30
 18 U.S.C. Sec. 1962(a) (emphasis added). Under the plain language of this section, a violation of Sec. 1962(a) consists of investing income derived from a pattern of racketeering activity to acquire an interest in, establish, or operate an enterprise; the violation is not established by mere participation in predicate acts of racketeering. Accordingly, under the plain terms of the statute, to state a civil claim under Sec. 1964(c) for a violation of Sec. 1962(a), a plaintiff must allege injury "by reason of" defendants' investment of racketeering income in an enterprise. Accord Rose v. Bartle, 871 F.2d 331, 356-58 (3d Cir.1989); Grider v. Texas Oil & Gas Corp., 868 F.2d 1147, 1149-51 (10th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989); see also Newmyer v. Philatelic Leasing, Ltd., 888 F.2d 385, 397-98 (6th Cir.1989) (not explicitly construing statute, but remanding where plaintiff asserting claim under Sec. 1962(a) might be able to establish injury from investment of racketeering income in enterprise).
 
 
 31
 Ouaknine argues, however, that the Supreme Court's decision in Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), "strongly suggests" a less restrictive interpretation which would permit recovery under Sec. 1962(a) even if a plaintiff alleges injury from the predicate acts alone. In Sedima, the Supreme Court held that a plaintiff alleging a violation of Sec. 1962(c) of the RICO statute could recover if he was harmed by the predicate racketeering acts. Sedima, 473 U.S. at 496-97, 105 S.Ct. at 3285. In so holding the Court made two statements that Ouaknine claims justify recovery under Sec. 1962(a) if a plaintiff avers injury occasioned solely by the predicate acts. First, the Court stated that "[i]f the defendant engages in a pattern of racketeering activity in a manner forbidden by [Sec. 1962(a)-(c) ], and the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim under Sec. 1964(c)." Id. at 495, 105 S.Ct. at 3284. That statement is not controlling here, however, for the Court was dealing only with Sec. 1962(c), which prohibits conducting the affairs of an enterprise through a pattern of racketeering. Concluding that the essence of a violation of Sec. 1962(c) is the commission of racketeering acts in connection with conducting the affairs of an enterprise, the Court understandably contemplated recovery there for injury caused by the predicate acts of racketeering themselves. Id. at 496-97, 105 S.Ct. at 3285. As noted above, however, the essence of a violation of Sec. 1962(a) is not commission of predicate acts but investment of racketeering income. Furthermore, the Sedima Court specifically stated that a "plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." Id. at 496, 105 S.Ct. at 3285 (emphasis added). We conclude that because the conduct constituting a violation of Sec. 1962(a) is investment of racketeering income, a plaintiff must allege injury from the defendant's investment of the racketeering income to recover under Sec. 1962(a).
 
 
 32
 Second, Ouaknine argues that an expansive reading of the Sec. 1962(a) violation is justified by the Sedima Court's statements that RICO is to be " 'liberally construed to effectuate its remedial purposes,' " id. at 498, 105 S.Ct. at 3286 (quoting Pub.L. 91-452, Sec. 904(a), 84 Stat. 947), and that "[t]he statute's 'remedial purposes' are nowhere more evident than in the provision of private action for those injured by racketeering activity." Id. Although it is beyond question that RICO is to be construed broadly, see, e.g., id. at 497-98, 105 S.Ct. at 3285-86; Sperber v. Boesky, 849 F.2d 60, 63 (2d Cir.1988), that general principle does not permit abrogation of the explicit words of the statute which here limit recovery under Sec. 1962(a) to injury by reason of investment of racketeering income in an enterprise.
 
 
 33
 We therefore hold that to state a claim for civil damages under Sec. 1962(a), a plaintiff must allege injury from the defendants' investment of racketeering income in an enterprise. Furthermore, because the district court correctly held that Ouaknine had alleged no facts asserting injury by reason of defendants' investment of racketeering income, we affirm the dismissal of the Sec. 1962(a) RICO claim.
 
 C. State-Law Claims
 
 34
 In addition to the federal securities and RICO violations, the amended complaint alleged pendent state-law claims, including wasting of assets, breach of fiduciary duty, failure to provide an accounting, breach of contract, and conversion. After having dismissed all federal claims and having determined that no exceptional circumstances justified retaining the state-law claims alone, cf. Walker v. Time Life Films, Inc., 784 F.2d 44, 53 (2d Cir.), cert. denied, 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 721 (1986); Kavit v. A.L. Stamm & Co., 491 F.2d 1176, 1180 (2d Cir.1974), the district court dismissed the state-law claims for lack of pendent jurisdiction. The district court did not abuse its discretion in so holding. Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988); accord Baylis v. Marriott Corp., 843 F.2d 658, 664-65 (2d Cir.1988). Because our decision reinstates the securities fraud claims and the Sec. 1962(c) RICO claim, however, the district court should on remand reconsider exercising pendent jurisdiction over the state-law claims with respect to defendants MacFarlane, Perry West, MacFarlane 95th, and Greenberg. Ghartey v. St. John's Queens Hospital, 869 F.2d 160, 166 (2d Cir.1989).
 
 III. CONCLUSION
 
 35
 The judgment of the district court is affirmed in part, reversed in part, and remanded. The securities fraud counts and the Sec. 1962(c) civil RICO claim which were dismissed for failure to plead fraud with particularity are reinstated with respect to MacFarlane, Perry West, MacFarlane Perry, and Greenberg. The dismissal of those claims as to MacFarlane Development is affirmed.
 
 
 36
 The Sec. 1962(a) claim is dismissed against all defendants because by failing to allege injury by means of defendants' investment of racketeering income in an enterprise, the complaint failed to state a claim upon which relief may be granted.
 
 
 37
 Finally, upon remand, the district court should reconsider exercising pendent jurisdiction over the state-law claims, with respect to MacFarlane, Greenberg, Perry West, and MacFarlane Perry. Insofar as the judgment dismissed the state-law claims with respect to MacFarlane Development, as to whom no federal claims have been reinstated, it is affirmed.