**Thomas M. LANDY, et al., Plaintiffs,**

v.

**HELLER, WHITE & COMPANY and World Information Systems, Defendants.**

No. 88 Civ. 2932 (PKL).

United States District Court,
S.D. New York.

Dec. 18, 1991.

---

Beigel & Sandler, New York City, Elizabeth M. Toll, of counsel, for plaintiffs.

Kurzman Karelsen & Frank, New York City, Samuel A. Abady, of counsel, for defendant World Information Systems.

## OPINION AND ORDER

LEISURE, District Judge.

This is an action under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, and principles of common law fraud. Defendant World Information Systems ("WIS") now moves the Court to dismiss the RICO claim against it pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6), for failure to plead fraud with particularity and for failure to state a claim upon which relief can be granted. For the following reasons, the motion is granted.

## BACKGROUND

As originally filed in 1988, this was an action by 56 investors in Petro–Tech Limited Partnerships I, II, III & V ("the partnerships"), against 12 defendants that allegedly established and solicited investments in the partnerships. By Opinion and Order dated April 5, 1990, *see Landy v. Mitchell Petroleum Technology Corp.*, 734 F.Supp. 608 (S.D.N.Y.1990), this Court dismissed certain of the causes of action asserted in the First Amended Complaint. On May 22, 1990, plaintiffs filed a Second Amended Complaint; subsequently, on August 9, 1990, the Court received the instant motion to dismiss the Second Amended Complaint. Although it became fully submitted on October 30, 1990, the motion was stayed while the parties attempted to negotiate settlements in these matters. In fact, the parties' discussions resulted in stipulations, signed by this Judge on September 11, 1990 and December 6, 1991, dismissing the action as against all defendants except WIS.[1]

In considering WIS' instant motion, the Court examines the face of the complaint,

assuming the truth of the facts alleged by plaintiffs. *See O'Brien v. National Property Analysts Partners*, 936 F.2d 674, 677 (2d Cir.1991); *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987). The Second Amended Complaint, like the two Complaints before it, alleges the existence of a scheme perpetrated by Henry Finesod ("Finesod"), and various others, to sell interests in the partnerships. The partnerships allegedly sought to exploit the exclusive marketing rights in a patented oil reclamation process; they were seen as an attractive investment based on the tax benefits to be reaped from the probable losses that would be suffered by the partnerships in their first years. However, in July 1986, three years after the partnerships were formed, one of the major risk factors cited in the offering memorandum came to pass, when the Internal Revenue Service disallowed all income tax deductions associated with the partnerships. Soon thereafter, this litigation ensued.

The Court next turns to examine the role of WIS, the only defendant remaining in this suit. Plaintiffs allege that "WIS provided consulting services to Mitchell Petroleum and provided Mitchell Petroleum with ... summar[ies] of market analys[es and] with information which was included in a document entitled 'Business Plan & Income Proforma Scenario.' " Second Amended Complaint ¶ 6(B). It is thus clear, from the face of the complaint, that WIS played only a minor role in the purported scheme, limited to the alleged production of a small number of reports and to the provision of consulting services.

The Second Amended Complaint alleges that WIS participated in preparing the following documents:

WIS prepared a report of market analysis of the oil reclamation industry and of the Aquanetics Mini–Reclamation Unit for Mitchell Petroleum [that] concentrated on the potential market and not on the feasibility of the system [and that] relied

---

1. Elizabeth Toll, Esq., counsel for plaintiffs, has informed the Court that defendant Heller, White & Company has not been served with the complaint in this action. Accordingly, the Court is awaiting the receipt of a Notice of

on the false and unreasonable assumptions in the Heller, White report. WIS knew or recklessly disregarded that the assumptions were unreasonable and could not truthfully be utilized as a basis for its reports. The Reports were false because the fair value of the system to Mitchell Petroleum was no more than $330,000, and was nil to the limited partnerships.

Second Amended Complaint ¶ 13.

WIS prepared a projection of profits which was included in a document entitled 'Business Plan & Income Proforma Scenario,' which was circulated to brokers and advisors of plaintiffs.... The Business Plan concluded that the Petro–Tech II's net profits over a five-year period would be approximately 19.5 million dollars. The Business Plan was false and misleading in that the value of the Limited Partnership's sublicense was, in fact, nil or minimal ...

Second Amended Complaint ¶ ¶ 14–16.

Prior to the Petro–Tech Partnership, WIS had previously prepared for Finesod in or about 1980, 1981 and 1982 an inflated appraisal for Finesod-promoted offerings which involved overvalued assets and which were abusive tax shelters, such as the Terra Drill ... and subsequent to the Petro–Tech Partnerships, WIS prepared inflated and false reports for Finesod for the World Nurseries Program in late 1984.... The promoters, with the knowledge of WIS ... used these reports to substantiate the potential revenues that Mitchell Petroleum and [the partnerships] could expect to receive.... Without these reports the fraudulent scheme could not have been perpetrated.

Second Amended Complaint ¶ ¶ 17–18.

Plaintiffs further allege that:

Defendants conspiring with and aiding and abetting each other, also committed two or more racketeering acts [of mail fraud, using the mails] in furtherance of the schemes and artifices to defraud plaintiffs.... The uses of the mails included, but were not limited to, transmittal of the private placement memoranda [and] the WIS ... Report[ ] to the plaintiffs in 1983; the World Nurseries private placement memoranda and the WIS report for World Nurseries in 1984; and the Terra Drill private placement memoranda and WIS report from 1980 through 1983 ...

Second Amended Complaint ¶ 50. In addition, plaintiffs allege that "the combination of defendants Finesod, Worldco, WIS and Friedman & Shaftan constitutes an association in fact and is an 'enterprise' within the meaning of 18 U.S.C. § 1961(4)." Second Amended Complaint ¶ 52.

In its first Opinion, the Court refused to dismiss the securities fraud claim against WIS. 734 F.Supp. at 619, 621.[2] However, the Court dismissed the RICO claim on a number of bases. First, the RICO claim was dismissed under Fed.R.Civ.P. 9(b), for failure to plead fraud with particularity, based on the Court's finding that the First Amended Complaint failed to allege which reports were mailed to plaintiffs, and how WIS was connected to the mailing of the various documents. See 734 F.Supp. at 622–23 ("Plaintiffs must identify which allegedly fraudulent documents, other than the offering memoranda, were mailed to plaintiffs. Further, where there are multiple defendants, plaintiffs must identify with particularity the roles of the individual defendants in the mail fraud."). In addition, the Court dismissed the RICO claim under Fed.R.Civ.P. 12(b)(6), for failure to plead continuity with respect to WIS. 734 F.Supp. at 624. While plaintiffs claim that the Second Amended Complaint cures

Dismissal of the action as against Heller, White & Company.

2. The Court notes that, under *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), a section 10(b) action must be brought within one year after discovery of the fraud, and no later than three years after the fraud occurred. Since the instant action was filed in

April 1988, and the allegedly fraudulent misrepresentations were made, at the latest, in April 1984, plaintiffs' section 10(b) claim is time barred. In addition, *Lampf* must be applied retroactively. See *Welch v. Cadre Capital,* 946 F.2d 185 (2d Cir.1991). However, the Court declines to raise the statute of limitations issue *sua sponte.* See *Davis v. Bryan,* 810 F.2d 42 (2d Cir.1987).

these deficiencies, defendants now renew their motion to dismiss.

## DISCUSSION

A. *Sufficiency of Predicate Acts Under Rule 9(b)*

In considering the instant motion, the Court first examines the sufficiency of the pleading of the individual predicate acts alleged against WIS. In examining the face of the complaint, the Court is controlled by the dictates of Fed.R.Civ.P. 9(b), which provides that: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." There are three purposes behind Rule 9(b): ensuring that the complaint provides the defendant with fair notice of plaintiffs' claims; protecting the defendant's reputation from unfounded allegations of improper conduct; and preventing institution of strike suits. *See O'Brien, supra,* 936 F.2d at 676; *Ross v. Bolton,* 904 F.2d 819, 823 (2d Cir.1990).

■ For the purposes of this motion, the Court must "read the complaint generously, and draw all inferences in favor of the pleader." *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989). However, even though Fed.R.Civ.P. 8(a) "requires only a 'short and plain statement' of the claims for relief," Rule 9(b) requires that "the time, place, speaker, and sometimes even the content of the alleged misrepresentation" must be alleged specifically. *Ouaknine v. MacFarlane,* 897 F.2d 75, 79 (2d Cir.1990) (quoting *Divittorio, supra,* 822 F.2d at 1247); *accord Ross, supra,* 904 F.2d at 823. If "defendants are insiders or affiliates participating in the offer," *Ouaknine, supra,* 897 F.2d at 80, a reference to the offering memorandum is sufficient to identify the "time, place, content and speaker" requirement. However, plaintiffs have not alleged that WIS is an insider. Rather, they allege that WIS merely prepared reports that would be used by the principals in the purportedly fraudulent scheme. The role of WIS parallels the roles of Price Waterhouse and Howard Jackson Associ-

ates in *O'Brien, supra,* 936 F.2d at 675, where the Court found these parties to be outsiders, based on their limited roles of providing opinions and preparing reports for the use of the principals.

Turning to the allegations in Paragraph 13 of the Second Amended Complaint, concerning market analyses of the oil reclamation industry and of the Aquanetics Mini-Reclamation Unit. Paragraph 13 provides information supporting an inference that the report was false. However, the Court is unable to determine, from the face of the pleadings, which documents form the basis for the allegations in Paragraph 13, or when the allegedly false statements in the documents were made. Moreover, the Complaint does not adequately plead facts supporting an inference of scienter.

■ While Rule 9(b) provides that scienter can be pleaded "generally," plaintiffs must specify "some factual basis for conclusory allegations of intent. Allegations of scienter are [only] sufficient if supported by facts giving rise to a 'strong inference' of fraudulent intent." *Ouaknine, supra,* 897 F.2d at 79–80 (citations omitted); *see also Breard v. Sachnoff & Weaver, Ltd.,* 941 F.2d 142, 143–44 (2d Cir.1991); *Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir.1990). The allegations in Paragraph 13 do not provide any facts from which scienter can be inferred. Rather, Paragraph 13 relies on the assertion that WIS "knew or recklessly disregarded" that the assumptions on which it was relying were unreasonable. These conclusory allegations are insufficient to support a strong inference of scienter, and the Court finds nothing fraudulent on the face of the assertion that the alleged Report purportedly focused on the potential market instead of the feasibility of the oil reclamation system. *See Kramer v. Time Warner, Inc.,* 937 F.2d 767, 776 (2d Cir. 1991) (finding inference of scienter from drop in market price of security to be "sheer speculation"); *O'Brien, supra,* 936 F.2d at 677 (rejecting inference of scienter in absence of particular facts demonstrating defendant's knowledge of falsity of representations); *Wexner, supra,* 902 F.2d

at 173 (rejecting chain of inferences where first claim, that defendants leaked confidential information, was insupportable). The allegations in Paragraph 13 therefore fail the test of Rule 9(b).

The Court next considers Paragraphs 14–16 of the Second Amended Complaint, wherein plaintiffs allege that WIS prepared a projection of profits that allegedly was included in a document entitled "Business Plan & Income Proforma Scenario." In these paragraphs the plaintiffs also allege the content of this document, and why it allegedly was false. However, as above, the Court finds no basis from which a finder of fact could infer scienter. Paragraphs 15 and 16 merely allege that the Business Plan was false and misleading. There is no allegation that WIS knowingly fabricated the profit projections that purportedly were included in the document, and the complaint alleges no facts from which a finder of fact could infer knowledge or intent. Thus, although the Complaint gives the title of the document and the reasons for its falsity, it fails to sufficiently allege scienter. The Court therefore cannot renew its previous holding, that the allegations in Paragraphs 14–16 are sufficient to survive a motion under Rule 9(b). *See Landy, supra,* 734 F.Supp. at 621.[3]

The Court next considers Paragraph 17, and finds that all of its allegations fail the Rule 9(b) standard. Plaintiffs first allege that, sometime between 1980 and 1982, WIS prepared "an inflated appraisal for Finesod-promoted offerings which involved overvalued assets and which were abusive tax shelters, such as Terra Drill." Then, plaintiffs allege that "subsequent to the Petro–Tech Partnerships, WIS prepared inflated and false reports for Finesod for the World Nurseries Program in late 1984." From the face of the pleading, the Court is unable to discern what documents plaintiffs are referring to. The content of these unspecified, allegedly "inflated" appraisals and reports are unclear, and how they are false is not demonstrated. The pleading suggests that the offerings were overvalued and abusive, but offers no facts to support this; in fact, the complaint appears to attribute the abuses in the Terra Drill matter to the actions of Finesod, and not to WIS. Paragraph 17 also fails to plead any facts yielding a strong inference of scienter. The allegations in Paragraph 17 are patently insufficient under Fed.R.Civ.P. 9(b), and must be dismissed for failure to plead fraud with particularity.

### B. *Motion to Dismiss RICO Claim*

The Court next turns to consider the sufficiency of the RICO claims asserted by plaintiffs under Fed.R.Civ.P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Festa v. Local 3 International Brotherhood of Electrical Workers,* 905 F.2d 35, 37 (2d Cir.1990); *see also Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984) ("The function of a motion to dismiss 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" (quoting *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980))).

Thus, a motion to dismiss must be denied "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (*citing Conely v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)); *see also Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988). In deciding a motion to dismiss, the Court must limit its

---

**3.** The Court takes this opportunity to note that it appears, from the allegations in Paragraph 17, that the allegations in Paragraphs 13–16 all relate to the same episode, during a short timespan in 1983. Thus, if the allegations in Paragraphs 13–16 did meet the requirements of Rule 9(b), they would merely allege that WIS prepared of a small number of reports in connection with the Petro–Tech offering, two of which were circulated among the promoters and one of which was mailed to plaintiffs' brokers and advisors.

analysis to the four corners of the complaint, *see Kopec v. Coughlin*, 922 F.2d 152, 154–55 (2d Cir.1991), and must accept the plaintiffs' allegations of fact as true, together with such reasonable inferences as may be drawn in his favor. *Papasan v. Allain*, 478 U.S. 265, 283, 106 S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986); *Murray v. Milford*, 380 F.2d 468, 470 (2d Cir.1967); *Hill v. Sullivan*, 125 F.R.D. 86, 90 (S.D.N.Y.1989) ("[A]ll allegations in plaintiffs' amended complaint must be accepted as true and liberally construed."); *see also Scheuer, supra*, 416 U.S. at 236, 94 S.Ct. at 1686.

### 1. Conducting the Affairs of a RICO Enterprise

■ The Court first turns to the RICO claim under 18 U.S.C. § 1962(c). Section 1962(c) provides that:

It shall be unlawful for any person employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ...

To state a claim for violation of § 1962(c), a plaintiff must allege "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) ... participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984); *see also Ouaknine, supra*, 897 F.2d 75, 83 (section 1962(c) "prohibits conducting the affairs of an enterprise through a pattern of racketeering.... [T]he violation of § 1962(c) is the commission of racketeering acts in connection with conducting the affairs of an enterprise ..."); *Clapp v. Greene*, 743 F.Supp. 273, 277 (S.D.N.Y. 1990) (quoting *Moss, supra*, 719 F.2d at 17), *aff'd*, 930 F.2d 912 (2d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 197, 116 L.Ed.2d 157 (1991).

■ A pattern of racketeering activity involves two elements: "a plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989); *see also Beauford v. Helmsley*, 865 F.2d 1386, 1390–91 (2d Cir.) (en banc), *vacated*, 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584 *and adhered to*, 893 F.2d 1433 (2d Cir.), *cert. denied*, 493 U.S. 992, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989). The relationship element is satisfied by allegations of " 'criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' " *Id.* 492 U.S. at 240, 109 S.Ct. at 2901 (quoting 18 U.S.C. § 3575(e) (repealed 1984)); *see also United States v. Indelicato*, 865 F.2d 1370, 1382 (2d Cir.) ("An interrelationship between acts, suggesting the existence of a pattern, may be established in a number of ways. These include proof of their temporal proximity, or common goals, or similarity of methods, or repetitions."), *cert. denied*, 493 U.S. 811, 110 S.Ct. 56, 107 L.Ed.2d 24, 25 (1989); *Friedman v. Arizona World Nurseries Limited Partnership*, 730 F.Supp. 521, 547–48 (S.D.N.Y.1990).

Continuity is the more difficult element to define and prove. As explained by the Supreme Court:

'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future, with a threat of repetition.... A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal activity. Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the *threat* of continuity is demonstrated.

*H.J. Inc., supra,* 492 U.S. at 241–42, 109 S.Ct. at 2901–02; *see also Beauford, supra,* 865 F.2d at 1390–92; *Azurite Corp. v. Amster & Co.,* 730 F.Supp. 571, 581 (S.D.N.Y.1990); *West Mountain Sales, Inc. v. Logan Mfg. Co.,* 718 F.Supp. 1084, 1087 (N.D.N.Y.1989) (predicate acts occurring over four months do not establish continuity).

■ Although the Court found in its previous Opinion that the first amended complaint sufficiently alleged the existence of an enterprise, the RICO count against WIS was dismissed for failure to adequately plead continuity with respect to WIS. *See* 734 F.Supp. at 624. To cure this defect, the plaintiffs have added additional predicate acts in the Second Amended Complaint, occurring between 1980 and 1982, before the Petro–Tech offerings, and in 1984, subsequent to the Petro–Tech offerings. *See* Second Amended Complaint ¶ 17–18. However, it is clear that a RICO claim that involves allegations of fraud must meet the dictates of Fed.R.Civ.P. 9(b), *see, e.g., Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 25–26 & n. 4 (2d Cir.1990), and this Court has already found that the allegations in the Second Amended Complaint concerning Terra–Drill and World Nurseries fail to meet this test.

■ Thus, even if the Court adhered to its prior holding, and found that the allegations in Paragraphs 13–16 of the Second Amended Complaint were sufficient under Rule 9(b), plaintiffs would only be alleging that WIS prepared three reports for use in the Petro–Tech offering, two of which were circulated among the promoters and one of which was included in another document that was mailed to plaintiffs' brokers and advisors. Thus, the Court reaffirms its original holding in this matter:

> It is impossible to determine from the face of the complaint what, if any role, [WIS] had in the alleged racketeering activity beyond the creation and distribution of the offering materials, an event which occurred at best over a few months and which has long since ceased.

734 F.Supp. at 624. The allegations in the Second Amended Complaint do not raise any inference that the conduct of WIS in the instant case poses a threat of continuing criminal conduct; moreover, there are insufficient predicate acts attributed to WIS to yield any inference that "the predicates are a regular way of conducting defendant's ongoing legitimate business." *H.J. Inc., supra,* 492 U.S. at 243, 109 S.Ct. at 2902.

### 2. *RICO Conspiracy*

■ The Court next turns briefly to consider plaintiffs' section 1962(d) RICO conspiracy allegations. The Court begins by disagreeing with plaintiffs' assertion that the Court's prior Opinion found that the RICO conspiracy allegations met the test of Fed.R.Civ.P. 12(b)(6). *See* Plaintiffs' Response, at 36. As the Second Circuit has made clear, "Rule 9(b) applies only to fraud or mistake, not to conspiracy. [A] pleading of conspiracy, apart from the underlying acts of fraud, is properly measured under the more liberal pleading requirements of Rule 8(a). Even so, the complaint must allege some factual basis for a finding of a conscious agreement among the defendants." *Hecht, supra,* 897 F.2d at 26 n. 4.; *see also Rose v. Bartle,* 871 F.2d 331, 366 (3d Cir.1989); *Andreo v. Friedlander, Gaines, Cohen, Rosenthal & Rosenberg,* 660 F.Supp. 1362, 1372 (D.Conn.1987).

In the instant case, the Court searches the complaint in vain for any factual allegations supporting an inference that WIS consciously agreed to become part of a RICO conspiracy. The use of the term "conspiring" in paragraphs 49, 50 and 53 is not such a factual allegation, and plaintiffs' remaining claims only suggest that WIS provided a limited number of reports for use by the principals in this matter. There are simply no facts or allegations from which a rational finder of fact could infer that WIS consciously agreed to engage in a RICO conspiracy. Plaintiffs' RICO claims therefore must be dismissed under Rule 12(b)(6).

### 3. *Pendent State Law Claims*

■ WIS also moves the Court to dismiss the pendent state law claims asserted

by the plaintiffs. Given this Court's dismissal of the RICO claims, the only federal question that remains is the section 10(b) claim of plaintiff Steven Ezzes ("Ezzes"). *See Landy, supra,* 734 F.Supp. at 625. Pendent party jurisdiction is not available to the remaining plaintiffs in this case. *See Roco Carriers, Ltd. v. M/V Nurnberg Express,* 899 F.2d 1292 (2d Cir.1990). Thus, all state law claims other than those brought by Ezzes must be dismissed. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *West Hartford v. Operation Rescue,* 915 F.2d 92, 104–05 (2d Cir.1990).

### C. *Dismissal with Prejudice*

■ Finally, the Court holds that the RICO claims must be dismissed with prejudice. Under Fed.R.Civ.P. 15(a), leave to amend "shall be freely given when justice so requires." It is clear that Rule 15(a) has been interpreted liberally, and that the granting of a motion to dismiss is almost always accompanied by leave to replead. *See Richardson Greenshields Securities, Inc. v. Lau,* 825 F.2d 647, 653 n. 6 (2d Cir.1987); *Luce v. Edelstein,* 802 F.2d 49, 56 (2d Cir.1986). However, dismissal of a complaint with prejudice is proper if it is "based on a valid ground." *Cortec Industries v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991); *Ronzani v. Sanofi S.A.,* 899 F.2d 195, 198 (2d Cir.1990).

■ The Court finds that there are compelling reasons for dismissing the instant RICO claims with prejudice. When a complaint is defective to such an extent that "it would be futile to grant leave to replead," dismissal with prejudice is proper. *Cortec Industries, supra,* at 48. Moreover, dismissal of a complaint with prejudice is proper when the complaint has been amended previously. *See O'Brien, supra,* 936 F.2d at 676–77 (rejecting leave to replead after second dismissal for failure to plead fraud with particularity); *Ronzani, supra,* 899 F.2d at 198 ("Since [plaintiff] had not previously been given leave to amend ... we hold that the court abused its discretion in dismissing the complaint without leave to amend.").

 In the instant case, plaintiffs have already amended their complaint twice. The amendments undertaken by plaintiffs with the goal of meeting the deficiencies highlighted in the Court's previous Opinion failed the test of Fed.R.Civ.P. 9(b). Thus, the Court has dismissed the RICO claim against WIS for a second time, for failure to allege continuity. The Court's reconsideration of the complaint also found that the section 10(b) claims are not pleaded with sufficient particularity, and pointed to defects in these claims arising out of the Supreme Court's decision in *Lampf.* The Court therefore finds that there is a valid basis for dismissing the RICO claims with prejudice.

### CONCLUSION

For the foregoing reasons, the RICO claims in the Second Amended Complaint are hereby dismissed with prejudice. The state law claims of all plaintiffs except Steven Ezzes are dismissed with prejudice.

SO ORDERED.