**TRIBUNE COMPANY, et al., Plaintiffs,**

v.

**PURCIGLIOTTI, et al., Defendants.**

No. 93 Civ. 7222 (LAP).

United States District Court,
S.D. New York.

Nov. 14, 1994.

Steven M. Bierman, Alan M. Unger, Sidley & Austin, New York City, Richard S. Busch, King & Ballow, Nashville, TN, for plaintiffs.

William G. O'Donnell, Sr., O'Donnell, Fox & Gartner, P.C., New York City, for defendants Robert A. Purcigliotti and Cascione, Chechanover & Purcigliotti.

David S. Frankel, Susan Jacquemot, Kramer, Levin, Naftalis, Nessen, Kamin & Frankel, New York City, for defendant Dr. Walter Stingle.

Lawrence A. Marcus, J. Mark Lane, Skadden, Arps, Slate, Meagher & Flom, New York City, for Union defendants.

Seth M. Kupferberg, Sipser, Weinstock, Harper & Dorn, New York City, for defendant Newspaper and Mail Deliverers' Union, New York and Vicinity.

Gabrielle Semel, Weissman & Mintz, New York City, Richard Rosenblatt, Boyle, Tyburski, Toll & Rosenblatt, Englewood, CO, for defendant New York Mailers' Union No. 6, Printing Publishing and Media Workers Sector of Communications Workers of America.

Steven J. Saltiel, Kenneth E. Gordon, Gordon, Gordon & Tepper, P.C., New York City, for individual Pressmen defendants.

Diane Britton, Pavelic & Levites, P.C., New York City, for defendant Cornelius Britton.

**1082**

Andrew S. Hoffmann, Wiseman, Hoffmann & Walzer, New York City, for various individual defendants.

## OPINION AND ORDER

PRESKA, District Judge.

Plaintiff, the Tribune Company ("Tribune"), has brought this action against defendants alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), (d), common law fraud and unjust enrichment. Tribune's action names numerous defendants: Robert A. Purcigliotti, an attorney ("Purcigliotti"); Cascione, Chechanover & Purcigliotti, a law firm of which Purcigliotti is a member ("CCP"); Dr. Walter Stingle, a medical doctor ("Stingle"); New York Newspaper Printing Pressmen's Union No. 2 ("Pressmen's Union"), Newspaper and Mail Deliverers' Union–New York and Vicinity ("Drivers' Union") and New York Mailers' Union No. 6–Printing Publishing and Media Workers Sector of the Communication Workers of America ("Mailers' Union") (collectively "Union defendants"); and 585 union members and employees of the *New York Daily News* ("Individual defendants").

The defendants have moved to dismiss on numerous grounds. I heard oral argument on the motions on July 8, 1994. For the following reasons, the motions to dismiss are granted in part and denied in part.

## BACKGROUND

The Amended Complaint alleges the following claims for monetary relief: violations of RICO by all defendants; fraud, aiding and abetting and conspiracy to commit fraud by all defendants; unjust enrichment by all defendants; and negligent misrepresentation by defendant Stingle. These allegations arise out of the filing of workers' compensation claims by former New York News[1] workers against the New York News for hearing loss allegedly caused by exposure to harmful noise at *Daily News* facilities. (Amended Complaint ¶ 2.)

Plaintiffs allege that defendants, "motivated by greed and ill-will" engendered by a bitter 1990–91 strike by unionized workers' against the New York News, engaged in a scheme to defraud the New York News and Tribune "by filing and prosecuting workers' compensation claims." (*Id.* ¶ 2.) The Amended Complaint includes the following allegations regarding the fraudulent scheme: the Union defendants directed the Individual defendants to retain defendant CCP; defendant Purcigliotti was the lawyer primarily responsible for this matter, (*Id.* ¶ 3); in order to implement the fraudulent scheme, the Union defendants, CCP and Purcigliotti directed the Individual defendants to retain defendant Dr. Stingle to examine them in support of their claims for hearing loss (*Id.* ¶ 61), and defendant Stingle performed audiograms and took no steps to ensure that the audiograms were accurate, though he knew they were not. (*Id.* ¶ 62.)

Under New York Workers' Compensation Law, the last employer who exposes an employee to harmful noise is liable in full for the employee's occupationally-related hearing loss, regardless how long the employee worked for previous employers or how short a time he or she worked for the last employer. *See* N.Y.Work.Comp.Law § 49–ee. In addition, the Workers' Compensation Law requires the claimant to show that he or she was removed from harmful noise for a period of three months and was not re-exposed to harmful noise thereafter with another employer. *See* N.Y.Work.Comp.Law § 49–bb. An employee effectively is "removed" if he or she physically is excluded from the workplace or begins wearing hearing protectors. *Id.* Because of the strike against the New York News, union workers had been removed from exposure to occupational noise at the *Daily News* plants for more than three months.

The Amended Complaint additionally alleges that Purcigliotti and CCP knew that under this "last employer doctrine," New York News could be held liable for the hearing loss claims only if the date of last expo-

1. New York News was the publisher of the *Daily News* at the time the alleged hearing injuries occurred.

sure was a date prior to the day that New York News sold the *Daily News*. (Amended Complaint ¶ 51.) It is alleged that CCP, Purcigliotti and the Individual defendants falsely claimed October 26, 1990, the date that the strike began, as the date of last exposure to harmful noise in order to render plaintiffs liable for the hearing loss claims. (*Id.* ¶¶ 51, 58.) "Lacking knowledge of a conspiracy to defraud them, New York News and Tribune were induced ... to enter into settlements of numerous individual claims." (*Id.* ¶ 6.) After uncovering evidence of the fraud, plaintiffs commenced this action. (*Id.* ¶¶ 72–79.)

All defendants[2] have moved to dismiss on the ground that abstention is required. In addition, the Attorney General for the State of New York intervenes in this action on behalf of the New York State Workers' Compensation Board in order to move to dismiss this action on the ground of abstention. The defendants move to dismiss the Amended Complaint based on numerous other grounds as well: the Union defendants, CCP and Purcigliotti move to dismiss on the ground that the Amended Complaint fails to allege the RICO claims with the particularity required by Fed.R.Civ.P. 9(b); the Individual defendants, CCP and Purcigliotti move to dismiss the RICO claims on the ground that their conduct in filing and prosecuting workers' compensation claims is immunized and cannot constitute predicate acts; Dr. Stingle similarly argues that all claims against him should be dismissed because, as a witness, he is absolutely immune from civil liability.

The defendants make the following arguments that the Amended Complaint fails to state a cause of action under RICO: (i) the Individual defendants argue that the Amended Complaint fails to allege a "pattern"; (ii) the Union defendants argue that the Amended Complaint fails to allege an "association-in-fact" enterprise; (iii) all defendants argue that the Amended Complaint fails to allege that any of them "operated or managed" any of the alleged RICO enterprises; (iv) CCP, Purcigliotti, Stingle and the Unions assert that the Amended Complaint fails to allege causation; (v) all defendants assert that the Complaint fails sufficiently to allege either "aiding or abetting" liability or a RICO conspiracy. Finally, as to the non-RICO claims, the defendants argue the following: that the state law fraud claims should be dismissed for failure to comply with Fed.R.Civ.P. 9(b) and for failure to state a cause of action under Fed.R.Civ.P. 12(b)(6); Stingle also argues that the negligent misrepresentation claim should be dismissed for failure to state a claim; the Union and Individual defendants assert that the unjust enrichment claims should be dismissed for failure to state a cause of action; all defendants also argue that plaintiffs should be collaterally estopped from relitigating claims that have already settled.

## DISCUSSION

### I. Abstention

Defendants move to dismiss this action, arguing that "this Court should decline plaintiffs' invitation to disrupt the New York State Workers' Compensation scheme, and should abstain" under *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). (Defendants' Memorandum of Law in Support of Motion to Dismiss on the Grounds of Abstention at 2 ("Def. Abstention Mem.").) Likewise, the intervenor moves for dismissal in order "to avoid an unwarranted and unnecessary interference with the State's administration of its internal affairs." (Memorandum of Law on Behalf of Intervenor New York State Workers' Compensation Board in Support of Abstention at 1 ("Intervenor's Mem.").)

At least 379 of the individual defendants named in the Amended Complaint have hearing loss claims currently pending before the Workers' Compensation Board (the "Board"). (Affidavit of Olga C. Dais[3] Sworn to on

---

**2.** At the initial pretrial conference held on December 17, 1993, and by Order dated December 20, 1993, I ordered that any *pro se* defendant who did not wish to join in the motion to dismiss should so state in a letter to the Court. No such letter has been submitted to the Court, and,

therefore, all defendants join in this motion to dismiss.

**3.** Ms. Dais is General Counsel of the New York State Workers' Compensation Board.

February 10, 1994 ¶ 14 ("Dais Aff.").) Of the other named defendants' cases, 178 are listed in Board records as closed and at least 5 are in the process of being reopened administratively.[4] (*Id.*)

The Board already has ruled, in favor of plaintiffs, that approximately 250 prior audiograms are admissible in evidence at the hearings. These audiograms may be used by plaintiffs to challenge the percentage of hearing loss reported by the claimants' physician(s). (*Id.* ¶ 15.) Presently, the Board is in the process of holding hundreds of hearings on the individual defendants' claims, at which the examining physicians for both the individual defendants and the *Daily News* will appear as witnesses. (*Id.* ¶ 16.) It is predicted that these hearings will continue well into 1995. (*Id.*)

■ As restated by the Supreme Court, a federal court's obligation to adjudicate claims within its jurisdiction is " 'virtually unflagging.' " *New Orleans Public Service v. Council of the City of New Orleans,* 491 U.S. 350, 359, 109 S.Ct. 2506, 2513, 105 L.Ed.2d 298 (1989) ("*NOPSI* ") (quoting *Deakins v. Monaghan,* 484 U.S. 193, 203, 108 S.Ct. 523, 530, 98 L.Ed.2d 529 (1988)). Furthermore, " 'the presence of a federal basis for jurisdiction,' " as in this case, " 'may raise the level of justification needed for abstention.' " *County of Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295, 1309 (2d Cir.1990) ("*LILCO* ") (quoting *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 815 n. 21, 96 S.Ct. 1236, 1245 n. 21, 47 L.Ed.2d 483 (1976)). I am mindful that abstention "remains 'the exception, not the rule.' " *NOPSI,* 491 U.S. at 359, 109 S.Ct. at 2513 (quoting *Colorado River,* 424 U.S. at 813, 96 S.Ct. at 1244 (1976)).

■ Defendants and the intervenor nevertheless assert that I should abstain under the *Burford* doctrine, which provides,

Where timely and adequate state-court review is available, a federal court ... must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are 'difficult questions of state law bearing upon public problems of substantial public import whose import transcends the result in the case at bar'; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish coherent policy with respect to a matter of substantial public concern.'

*NOPSI,* 491 U.S. at 361, 109 S.Ct. at 2514 (1989) (quoting *Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1244–45 (1976)). The intervenor argues that I should abstain because (i) the New York's workers' compensation system is a complex matter of substantial public concern, and the system's unified decision-making would be disrupted by my exercise of jurisdiction, and (ii) the state administrative and judicial procedures available to plaintiffs are adequate and would be timely. Both defendants and the intervenor point out the risk that the Board and I will make inconsistent factual determinations and reach different results regarding the alleged fraudulent hearing loss claims. Plaintiffs, on the other hand, argue that the strict requirements for invoking *Burford* abstention are not present here and that "timely and adequate state-court review" of plaintiffs' RICO claims is not available.

■ As noted above, plaintiffs allege a massive fraud orchestrated and participated in by three unions, a law firm and a doctor, resulting in the filing of some 600 fraudulent workers' compensation hearing loss claims. The crux of the Amended Complaint is the various claims for relief (there are eight) alleging federal RICO violations based on, *inter alia,* various acts of mail fraud as predicate acts. Rather than presenting complex or unsettled questions of state law, this case presents difficult and serious issues arising under a federal statute. Indeed, the *federal* questions presented in this case bear on "policy problems of substantial public import," as exemplified by the treble damage provision that Congress chose to include in the RICO statute, "whose importance transcends the result[s]" of the individual claims before the Workers' Compensation Board. *See NOPSI,* 491 U.S. at 361, 109 S.Ct. at 2514.

4. Board records do not indicate the status of the remaining 30 claims. (Dais Aff. ¶ 14.)

Because this case does not involve "difficult questions of state law," the initial analysis is focused on whether the exercise of federal review "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Id.* There is no doubt that the compensation of occupational hearing loss is "a matter of grave concern" to the State of New York. *See* N.Y. Workers' Comp.Law § 49-aa. The New York State Legislature has found that the public interest is best served if the Workers' Compensation law provides the exclusive method for compensating individuals for occupational loss of hearing. *Id.* In this case, potential for conflict arises from the fact that, in deciding the underlying mail fraud component of the RICO claims, I necessarily will be required to ascertain whether the individual worker defendants made misrepresentations about their hearing loss. Consequently, there is a risk of inconsistent factual determinations.

■ Outside conclusory statements, however, defendants and the intervenor have not demonstrated how retaining federal jurisdiction in this case will interfere with the state's efforts to establish a coherent workers' compensation policy. (Intervenor's Reply Mem. at 3 ("[i]f this Court proceeds, the Board will be precluded from administering the law uniformly and coherently because federal review of the same issues will be ongoing simultaneously with the risk of inequitable, inconsistent treatment of claimants.").) As recently stated by the Second Circuit, "[t]he mere existence of concurrent state and federal actions concerning similar matters is not enough to warrant abstention." *Sheerbonnet, Ltd. v. American Express Bank Ltd.*, 17 F.3d 46 (2d Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 67, 130 L.Ed.2d 23 (1994); *see also, NOPSI*, 491 U.S. at 362, 109 S.Ct. at 2515. ("[W]hile *Burford* is concerned with protecting complex state administrative processes from undue federal interference, it does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy.'").

■ In addition, in the context of a *Colorado River* abstention issue, the Third Circuit, for example, stated,

[t]he general rule regarding simultaneous litigation of similar issues in both state and federal courts is that both actions may proceed until one has come to judgment, at which point that judgment may create a res judicata or collateral estoppel effect on the other action.

*University of Maryland v. Peat Marwick Main & Co.*, 923 F.2d 265, 275–76 (3d Cir. 1991) (citing *McClellan v. Carland*, 217 U.S. 268, 282, 30 S.Ct. 501, 504–05, 54 L.Ed. 762 (1910)). That court found that, while certain issues to be litigated in the federal action would be similar to those raised in the state proceeding, "the lack of identity of all issues necessarily preclude[d] *Colorado River* abstention." *Univ. of Maryland*, 923 F.2d at 276. In the instant case, although some of the underlying factual issues will be the same as issues in the Board proceedings, the two proceedings are by no means duplicative. Moreover, as stated above, the importance of the federal questions presented in this case transcends the results of the factual issues presented by the individuals' claims before the Workers' Compensation Board.

The intervenor's strongest argument for abstention—amplified at oral argument—centers around the exclusive nature of the workers' compensation scheme. When an employee is injured on the job, his or her only recourse is to bring a workers' compensation claim. (Dais Aff. ¶ 3); N.Y.Work. Comp.Law § 11.[5] The system provides a nonfault-based liability system, where the basic test of liability is work-connection rather than fault. (Dais Aff. ¶ 3.) An employer is prohibited from discharging or discriminating in any manner against an employee as to his or her employment because the employee brings a workers' compensation claim, unless some "other valid reason" is shown to exist for such action by the employer. N.Y.Work. Comp.Law § 120. The exclusivity of the scheme ensures that the employer is relieved of the prospect of a large damage award, and

---

**5.** The Workers' Compensation Law provides some exceptions to exclusivity, *e.g.*, when the employee is injured on the job as a result of an intentional tort. *See* N.Y.Work.Comp.Law § 29.

the employee is certain to obtain compensation.[6] (Dais Aff. ¶ 3.)

The intervenor argues that to allow this action to proceed in federal court would establish an exception to the compensation exclusivity of the workers' compensation scheme; employers and employees would be able to subvert the policy of exclusivity behind the scheme merely by bringing federal RICO actions. The intervenor further points out that the Board has made it a primary goal to prevent fraud in the workers' compensation process and argues that the state system provides a sufficient deterrent to and remedy for fraud in the workers' compensation process through actions before the Board and state criminal prosecution.

■ However, while the intervenor and defendants cast this action in terms of employees' alleged fraud upon the Workers' Compensation Board—something that could be addressed ably by the Board itself—the Amended Complaint paints a more complex picture. Accepting the allegations as true as required, this action involves a massive fraudulent scheme perpetrated against plaintiffs by almost 600 employees working in concert with a law firm, a doctor and three unions. Thus, on the other side of the equation from defendants' and the intervenor's concerns about creating an exception to exclusivity is the responsibility of a federal court to hear cases, such as these RICO claims, that are within its federal question jurisdiction. This is particularly true while addressing issues that Congress has found to implicate important questions of federal policy. Under *Colorado River*, when there is a concurrent state proceeding, abstention would be appropriate only in exceptional and narrow situations, " 'with the balance heavily

in favor of the exercise of jurisdiction.' " *University of Maryland*, 923 F.2d at 276 (quoting *Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). Where a federal jurisdictional basis is present, an increased level of justification is required for abstention. *See LILCO*, 907 F.2d at 1308. Moreover, "the unusual remed[y] of treble damages [in a RICO action] ... suggest[s] the importance of the federal interest involved, *again* raising the level of justification needed to abstain." *Id.* at 1309 (emphasis added).

On balance, to allow this action to proceed would not be disruptive of state efforts to create a coherent (and here, exclusive) workers compensation scheme because not every defrauded employer or claimant will be able to meet the demanding pleading requirements of a RICO action, particularly the requirements of alleging an enterprise and a pattern. Although this federal proceeding may interfere with the exclusivity of the state workers' compensation proceeding to some extent, such interference is not sufficient to meet the heightened level of justification required to compel abstention. Alternatively, placed in the state statutory context, plaintiffs have alleged "other valid reason[s]" for bringing this federal RICO action as contemplated by § 120 of the New York Workers' Compensation Law because of the uniqueness of their claim and the substantial federal interest in having claims brought pursuant to a federal statute heard and adjudicated.

Plaintiffs additionally argue that abstention would be inappropriate because the state proceeding does not provide them with "timely and adequate" review. *NOPSI*, 491 U.S. at 361, 109 S.Ct. at 2514. They

---

6. Defendants cite *Wegoland Ltd. v. Nynex Corp.*, 27 F.3d 17 (2d Cir.1994), in support of their argument that this federal proceeding will disrupt the uniformity of the workers' compensation scheme. However, *Wegoland* addressed the issue of whether there should be a general fraud exception to the filed rate doctrine, which provides that any rate approved by the governing regulatory agency, a "filed rate, is per se reasonable and unassailable in judicial proceedings brought by ratepayers." *Wegoland*, 27 F.3d at 18. The plaintiff ratepayers brought a RICO class action against a utility for fraudulently mis-

leading the regulatory agency into allowing the utility to charge higher rates. The court held that there was no such exception, finding that courts otherwise would become improperly enmeshed in the rate-making process and would undermine the stability of the regulatory scheme. *See id.* Consequently, the case was dismissed because it fit squarely into the "filed rate doctrine." Unlike this case, where no similar doctrine applies, *Wegoland* did not involve abstention. I find *Wegoland* distinguishable and inapposite to this case.

contend that the Board lacks jurisdiction to hear RICO claims, and such claims could not be raised on appeal of any Board decisions to the Supreme Court of the State of New York, Appellate Division, Third Department.[7] In addition, plaintiffs argue that the Board could not award plaintiffs the treble damages provided for under the RICO statute. Courts have found adequate review, as required by *Burford* and *NOPSI,* both where federal question jurisdiction is based upon a constitutional issue that the state tribunal is required to consider, *see, e.g., Bethpage Lutheran Serv. v. Weicker,* 965 F.2d 1239, 1244 (2d Cir.1992), and where jurisdiction is based on diversity, and thus the issue before the state tribunal is identical to the issue that would be before the federal court. *See, e.g., Glen 6 Assoc. v. Dedaj,* 770 F.Supp. 225, 228 (S.D.N.Y.1991).

■ *LILCO,* 907 F.2d 1295, involved allegations that defendant violated RICO by fraudulently causing the New York State Public Service Commission to grant defendant unwarranted and excessive rate increases. The defendant argued that the federal court should have abstained under the *Burford* doctrine. *See id.* at 1308. In reviewing the " 'complex of considerations' that should inform a federal court's decision to abstain," *id.,* the Court of Appeals found, among other things, that "the unavailability of treble damages and attorneys' fees in an action before the [state tribunal] also militates against the application of the *Burford* doctrine." *Id.* at 1309. Similarly, in the instant case, although a state court generally could hear plaintiffs' RICO claims, *Tafflin v. Levitt,* 493 U.S. 455, 458, 110 S.Ct. 792, 794–95, 107 L.Ed.2d 887 (1990), the workers' compensation board does not. Moreover, even if this were not true, because of the inability to assess treble damages, both the Board and, therefore, the appellate court that sits in review of the Board decisions involved here lack jurisdiction to hear plaintiffs' RICO claims fully. While this might not bar abstention in and of itself, I note the Supreme Court's admonition that the obligation of the federal court to adjudi-

cate claims within its jurisdiction is " 'virtually unflagging,' " *NOPSI,* 491 U.S. at 359, 109 S.Ct. at 2513 (quoting *Deakins v. Monaghan,* 484 U.S. at 203, 108 S.Ct. at 530), and its observation that "Congress drafted RICO broadly enough to encompass a wide range of criminal activity, taking many different forms and likely to attract a broad array of perpetrators operating in many different ways." *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 248–49, 109 S.Ct. 2893, 2905, 106 L.Ed.2d 195 (1989). It is my duty to consider allegations of such activity even though such consideration may involve some overlap with matters before the New York State Workers' Compensation Board. Accordingly, I find abstention to be inappropriate, and thus the motions to dismiss of intervenor and defendants on the ground of abstention are denied.

## II.  Rule 9(b)

■ Fed.R.Civ.P. 9(b) provides that

> [i]n all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

To comport with Rule 9(b), the complaint must specify the statements contended to be fraudulent, identify the speaker, state where and when the statements were made, and explain why the statements were fraudulent. *See Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir.1993) (citing *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989)). The rule is designed to provide a defendant with fair notice of a plaintiff's claim, enable preparation of a defense, protect a defendant from harm to his reputation, and reduce the number of strike suits. *See DiVittorio v. Equidyne Extractive Industries,* 822 F.2d 1242, 1247 (2d Cir.1987) (citing *Reingold v. Deloitte Haskins & Sells,* 599 F.Supp. 1241, 1266 (S.D.N.Y.1984)). For purposes of this motion, the factual allegations of the Amended Complaint are accepted as true, and all infer-

---

7. All appeals of the Board's determinations are heard before the New York State Supreme Court, Appellate Division, Third Department. (Dais Aff. at 9.) This statutory provision for appellate juris-

diction was designed to allow one court to acquire a familiarity and expertise with workers' compensation law. (*Id.*)

ences are drawn in favor of the pleader. *See Mills,* 12 F.3d at 1174.

## A. RICO Claims

█ In order to state a RICO claim, a plaintiff must allege that defendants "conduct[ed] or participat[ed] . . . in the conduct of [an] enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). A "pattern of racketeering activity" consists of "at least two acts of racketeering activity" within a ten year period. *See* 18 U.S.C. § 1961(5); *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985); *McLaughlin v. Anderson,* 962 F.2d 187, 190 (2d Cir. 1992). Among the predicate acts enumerated in § 1961(1) is any act of mail fraud indictable under the federal mail fraud statute, 18 U.S.C. § 1341. Plaintiffs allege that the defendants committed acts of mail fraud, constituting the predicate acts for the RICO claims. (Amended Complaint ¶¶ 81–83.)

█ To plead a violation of the federal mail fraud statute sufficiently under Rule 9(b), a complaint must allege "the existence of a fraudulent scheme and a mailing in furtherance of the scheme." *McLaughlin,* 962 F.2d at 191 (citing *Schmuck v. United States,* 489 U.S. 705, 712, 109 S.Ct. 1443, 1448–49, 103 L.Ed.2d 734 (1989); *Pereira v. United States,* 347 U.S. 1, 8, 74 S.Ct. 358, 362–63, 98 L.Ed. 435 (1954)). The mailing is violative of the mail fraud statute if the defendant "caused" the mailing and the mailing was " 'incident to an essential part of the scheme.' " *United States v. Bortnovsky,* 879 F.2d 30, 36 (2d Cir.1989) (quoting *Pereira,* 347 U.S. at 8–9, 74 S.Ct. at 362–63). The defendant need not personally initiate or receive the mailing to be liable for mail fraud, so long as the use of the mails by others was reasonably foreseeable. *See Bortnovsky,* 879 F.2d at 38. Any mailing "incidental" to an essential part of the scheme will be regarded as reasonably foreseeable. *See Healey v. Pyle,* No. 89 Civ. 6027, 1992 WL 80775, at \*4 (S.D.N.Y. March 31, 1992).

The Union defendants argue that plaintiffs' RICO claims are not pled in accordance with Fed.R.Civ.P. 9(b) because the Amended Complaint insufficiently alleges that the Un-

ions "caused" the mails to be used and that the Unions acted with fraudulent intent. CCP and Purcigliotti assert that the Amended Complaint fails to meet Rule 9(b)'s dictates because it insufficiently alleges that CCP and Purcigliotti acted with fraudulent intent.

### 1. Commission of Predicate Acts by Union Defendants

█ Fed.R.Civ.P. 9(b), which requires that "in all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity," is simply designed to allow the "defendant 'a reasonable opportunity to answer the complaint' " and "frame a response." *Connolly v. Havens,* 763 F.Supp. 6, 12 (S.D.N.Y.1991); *see Mann v. Levy,* 776 F.Supp. 808, 813 (S.D.N.Y.1991). Rule 9(b) must be read in conjunction with Rule 8(a), which requires a plaintiff to plead only a short, plain statement upon which he is entitled to relief. *See Connolly,* 763 F.Supp. at 12. Rule 9(b) does not require the pleading of evidence but instead only that plaintiff plead the circumstances constituting the fraud so that defendant can respond. *See Pellman v. Cinerama,* 503 F.Supp. 107, 111 (S.D.N.Y.1980).

█ In order to satisfy Rule 9(b) in a RICO claim, where the predicate acts alleged are mail fraud, the alleged fraudulent mailings must be linked to particular defendants, and may not be attributed vaguely to "defendants." *See Mills,* 12 F.3d at 1175 (citing *Luce v. Edelstein,* 802 F.2d 49, 55 (2d Cir. 1986)); *see also DiVittorio,* 822 F.2d at 1247 ("[W]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud"); *Merrill Lynch, Pierce, Fenner & Smith v. Young,* No. 91 Civ. 2923, 1994 WL 88129, at \*11, \*16, \*20 (S.D.N.Y. March 15, 1994) (under Rule 9(b), complaint may not "collectivize" or "lump" defendants together); *Landy v. Mitchell Petroleum Tech. Corp.,* 734 F.Supp. 608, 623 (S.D.N.Y.1990) (same).

The Union defendants argue that the Amended Complaint fails to allege with the particularity required by Rule 9(b) facts sufficient to suggest that the Unions "caused"

any mailings. They also argue that the alleged acts of mail fraud are not linked to any one Union defendant sufficiently but, rather, are attributed vaguely to "the Unions."

The Amended Complaint alleges that each of the defendants, including the defendant Unions, "caused" each of the "thousands of mailings to occur," (Amended Complaint ¶¶ 81, 82), then sets out ten different types of mailings allegedly caused by the defendants and identifies as to each mailing the sender, type of mailing, date of mailing and recipient. (Amended Complaint ¶¶ 81, 82, App.B.) None of the Union defendants is identified in this appendix as a sender or recipient. (*Id.*) The Amended Complaint goes on to make the following allegations of direct conduct, among others,[8] by the three Union defendants in which they are alleged to have caused fraudulent mailings:

> [T]o advance the [criminal] goals [of filing and prosecuting false individual workers compensation claims against the Daily News], ... the defendant unions directed individual defendants to retain [CCP]

(Amended Complaint ¶ 3);

> [T]he Pressman's Union, the Driver's Union, and the Mailers' Union ... participated in the development and implementation of the fraudulent scheme.

(*Id.* ¶ 43); and

> Defendant Unions ... directed claimants to [CCP], Purcigliotti, and Stingle for the filing and prosecution of fraudulent hearing loss claims....

(*Id.* ¶ 49.)

Other allegations are made upon information and belief:

> Before bringing their fraudulent claims, the Individual Defendants took part in discussions between and among themselves and, on information and belief, with the defendant Unions, many of the officials of which themselves participated in the scheme by filing fraudulent hearing loss claims. Through these discussions, Individual Defendants were referred to CC & P and Purcigliotti for the filing and prosecution of the fabricated hearing loss claims, and to Dr. Stingle for the necessary audiological exam.

(*Id.* ¶ 37.); and

> On information and belief, the defendant Unions were responsible for coordinating the scheme by informing the individual claimants that the Unions were involved in

---

**8.** Plaintiffs additionally point to conduct by officers of the various Union defendants filing personal claims of hearing loss. For example, it is alleged that "[t]he Chairman of the Mailers' Union ... filed a fraudulent hearing loss claim," and that "[s]everal officers of the Pressman's Union, including its Chairman and Vice Chairman, participated in the scheme by filing fraudulent hearing loss claims."

These allegations cannot be attributed to the relevant Union defendant because the officers were not acting within the scope of their official employment or authority. *See Amendolare v. Schenkers Int'l Forwarders,* 747 F.Supp. 162, 168 (E.D.N.Y.1990) (vicarious liability can be imposed on union for acts of union officials committed in their official capacity). The filing of hearing loss claims are individual acts performed in a personal capacity.

In addition, "the weight of authority in this district and other circuits is against the imposition of [vicarious] liability" as a basis for civil liability under RICO. *See Pollack v. Laidlaw Holdings,* No. 90 Civ. 5788, 1993 WL 17302, at *10 (S.D.N.Y. Jan. 21, 1993) (citing cases), *rev'd in part,* 27 F.3d 808 (2d Cir.1994) (declining "the invitation to decide" the issue of RICO vicarious liability on interlocutory appeal).

Plaintiffs also press a "mass action" theory, arguing that when union members act *en masse,* liability for their actions may be imputed to the union, even where the entire union does not participate. *See Consolidation Coal Co. v. Local Union No. 2322, United Mine Workers of Am.,* No. 86–1709, 1987 WL 38479, at *3 (4th Cir. August 10, 1987).

This theory only has been applied, however, in the limited context "under which a local union may be held liable for an unlawful strike" by substantially all of its members. *See Local Union No. 2322,* at *2. Moreover, even in this limited context, other circuit courts have rejected the theory. *See, e.g., Consolidation Coal Co. v. Local No. 2216, United Mine Workers of Am.,* 779 F.2d 1274, 1276–77 (7th Cir.1985) (finding common law agency theory to be proper theory of liability, rejecting mass action theory); *Consolidation Coal Co. v. United Mine Workers of Am., Local 1261,* 725 F.2d 1258, 1262 (10th Cir.1984) (same) (citing *Carbon Fuel Co. v. United Mine Workers of Am.,* 444 U.S. 212, 100 S.Ct. 410, 62 L.Ed.2d 394 (1979)).

Given that plaintiffs cite to no case where the mass action theory has been applied outside this limited context, and because I find such an extension to be inappropriate in this case, I reject this theory of liability.

**1090**

a concerted action against plaintiffs; by assuring that their members participated in the scheme by directing them to file claims against New York News, whether they had a valid claim against New York News or not; by directing their members and former New York News employees to [CCP] and Purcigliotti to carry out the scheme....

(*Id.* ¶ 43.)

Along with the above allegations of similar behavior by these three unions, the Amended Complaint also alleges certain actions by only one union. For example, plaintiffs allege that when John Desarle, a former member of the Pressmen's Union who was no longer in good standing and who had worked at the New York News during the strike as a replacement worker, went to CCP and Purcigliotti for assistance in filing a hearing loss claim, the Pressmen's Union instructed Purcigliotti not to represent Desarle, and CCP and Purcigliotti acceded by directing Desarle to another firm. (Amended Complaint ¶ 44.) Plaintiffs allege that the Drivers' Union "contacted Purcigliotti and CCP on occasion to ensure that Purcigliotti and CC & P were filing hearing loss claims on behalf of the Union's members." (Amended Complaint ¶ 5.) Similarly, plaintiffs allege that the Mailers' Union "contacted individuals no longer working at the *Daily News,* told them that the unions at the *Daily News* were involved in a "class action against plaintiffs, and instructed the individuals to file a hearing loss claim as part of the 'class action.'" (Amended Complaint ¶ 46.)

■ The Union defendants object to consideration of the allegations pleaded "on information and belief." (Amended Complaint ¶ 37, 43.) As a general rule, such pleading will not satisfy Rule 9(b). *See Stern v. Leucadia Nat'l Corp.,* 844 F.2d 997, 999 n. 1 (2d Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988). However, where "much of the factual information needed to fill out plaintiff's complaint lies peculiarly within the opposing parties' knowledge," as is often the case where fraud is involved, "the general rule disfavoring allegations founded upon belief ought not to be

rigidly enforced". *DiVittorio,* 822 F.2d at 1248.

■ Information and belief pleading can be supported by facts that raise an inference of fraudulent conduct. *See id.* at 1247. *See also Bharucha v. Reuters Holdings PLC,* 810 F.Supp. 37, 41–42 (E.D.N.Y.1993) (plaintiffs "painted a picture" supporting the information and belief); *Vista Co. v. Columbia Pictures Indus. Inc.,* 725 F.Supp. 1286, 1302 (S.D.N.Y.1989) (plaintiffs pleaded sufficient basis to infer fraud where facts were within defendants' possession); *Mechigian v. Art Capital Corp.,* 639 F.Supp. 702, 704 (S.D.N.Y. 1986) (complaint pleaded almost entirely on information and belief sufficiently apprised defendants of claims).

Here, plaintiffs point to the following underlying factual allegations supportive of the allegations upon belief: nearly all present members of each Union defendant filed false claims against plaintiffs, (Amended Complaint ¶¶ 84–668); senior officers of the Union defendants filed knowingly false claims, (*id.* ¶¶ 45–47); the senior officer of the Drivers' Union committed perjury in the attempt to further the fraudulent scheme, (*id.* ¶ 45); the Unions remained in contact with CCP to ensure the scheme was continuing as planned, (*id.* ¶¶ 44, 45); and every Individual defendant went to and engaged CCP/Purcigliotti and Stingle as directed. (*Id.* ¶¶ 3, 4.) Drawing all inferences in favor of the pleader, these factual allegations are sufficient to support an inference of fraud. Thus, the allegations on information and belief are sufficient to satisfy Rule 9(b) and will be considered.

■ Considering all of the allegations with respect to the Union defendants, including those on information and belief, and drawing all inferences in favor of the pleaders, plaintiffs have satisfied the burden imposed by Rule 9(b) in this instance by alleging that each of the Unions (1) "caused the mailings," that is, that they acted "with knowledge that the use of the mails [would] follow in the ordinary course of business, or ... [that] such use [could] reasonably be foreseen even though not actually intended," and (2) the mailings were "incidental to an essential part of the scheme." *Bortnovsky,*

879 F.2d at 36 (quoting *Pereira,* 347 U.S. at 8–9, 74 S.Ct. at 362–63.) The fact that plaintiffs allege that each of the unions engaged in certain of the same actions does not "collectivize" the unions improperly; plaintiffs have merely alleged that each of the three unions engaged in the same conduct in some instances, (Amended Complaint ¶¶ 3, 37, 43), and that, in other instances, each union engaged in one or more specific acts in furtherance of the scheme which were different from acts engaged in by the other two unions. (Amended Complaint ¶¶ 44–46.) Certainly for purposes of Rule 9(b), the Amended Complaint adequately informs each Union defendant of the nature of its alleged participation in the fraud and adequately links each one to the allegedly fraudulent mailings. *See Mills,* 12 F.3d at 1175; *DiVittorio,* 822 F.2d at 1247. Accordingly, the Union defendants' motion to dismiss the RICO claims against them for failure to comply with Rule 9(b) in alleging that the Union defendants caused the mailings is denied.

### 2. Scienter

The Union defendants, CCP and Purcigliotti argue that the Amended Complaint should be dismissed because it fails to allege scienter with particularity as required under Rule 9(b). Although Rule 9(b) requires heightened particularity in pleading fraud, "'great specificity [is] not required with respect to ... allegations of ... scienter.'" *Cohen v. Koenig,* 25 F.3d 1168, 1173 (2d Cir.1994) (quoting *Connecticut Nat'l Bank v. Fluor Corp.,* 808 F.2d 957, 962 (2d Cir.1987)). As with allegations upon belief, "a plaintiff realistically cannot be expected to plead a defendant's actual state of mind." *Id.* (quoting *Fluor,* 808 F.2d at 962). However, the complaint must plead facts upon which the conclusory allegations of intent are based. *See Ouaknine v. MacFarlane,* 897 F.2d 75, 80 (2d Cir.1990). "Allegations of scienter are sufficient if supported by facts giving rise to a 'strong inference' of fraudulent intent." *Id.* (quoting *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir.1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988)). One method of pleading scienter "is to allege facts showing a motive for committing fraud and a

clear opportunity for doing so." *Beck,* 820 F.2d at 50 (citing *Goldman v. Belden,* 754 F.2d 1059, 1070 (2d Cir.1985)). Yet another manner of establishing a strong inference of scienter, "where motive is not apparent" is to identify "circumstances indicating conscious behavior by the defendant." *Beck,* 820 F.2d at 50 (citing *United States v. Simon,* 425 F.2d 796, 808–09 (2d Cir.1969), *cert. denied,* 397 U.S. 1006, 90 S.Ct. 1235, 25 L.Ed.2d 420 (1970)). Where this latter method is used, however, "the strength of the circumstantial allegations must be correspondingly greater." *Beck,* 820 F.2d at 50.

### Union Defendants

Plaintiffs argue that the Union defendants had a motive to participate in the fraudulent scheme in that the Union defendants were motivated by greed, ill-will and the desire to "get even" with plaintiffs after the "bitter" strike. (Amended Complaint ¶¶ 2, 37.) Plaintiffs allege that:

> In an attempt to enrich themselves and cause serious financial harm to New York News and Tribune, the defendant Unions, the Individual Defendants, together with Purcigliotti, CC & P, and Stingle, designed and implemented a scheme to defraud New York News and Tribune of millions of dollars through the filing and prosecution of false workers' compensation claims alleging work-related hearing loss.

(Amended Complaint ¶ 25.)

With respect to opportunity, plaintiffs allege that the New York Workers' Compensation Law requires that a hearing loss claim cannot be filed until the claimant is removed from the noisy workplace for three months and provides that the last employer to expose a worker to harmful noise is liable for the full amount of compensation awarded to the employee on account of his or her hearing loss. (Amended Complaint ¶¶ 30–32.) Thus, plaintiffs argue, the five month-long strike provided a particularly convenient opportunity to exploit these requirements in an effort to inflict financial damage on plaintiffs. Drawing all inferences in favor of plaintiffs, they have alleged facts giving rise to a strong inference of fraud in that they

adequately have alleged a motive for committing fraud and a clear opportunity for doing so. *See Ouaknine v. MacFarlane,* 897 F.2d at 80; *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d at 50.

In addition, plaintiffs also have alleged various "circumstances indicating conscious behavior" by the Unions defendants, including remaining in contact with CCP to ensure the scheme was continuing as planned, (Amended Complaint ¶¶ 44, 45); the Pressmen's Union's influencing representation of an out-of-favor former member, (*id.* ¶ 44); the Drivers' Union's arranging for false testimony by one of its officers so as to increase the likelihood of fraudulently induced settlements, (*id.* ¶ 45), and the Mailers' Union's contacting individuals no longer employed and instructing them to file hearing loss claims. (*id.* ¶ 46). For the reasons discussed in part IIA1 above, I find plaintiffs to have alleged scienter sufficiently under this standard as well. *See Ouaknine,* 897 F.2d at 80. Accordingly, the Union defendants' motion to dismiss the RICO claims as to them for failure to plead scienter with particularity is denied.

### CCP and Purcigliotti

Plaintiffs also argue that they sufficiently pled scienter as to CCP and Purcigliotti based on motive and opportunity. The Amended Complaint alleges that CCP and Purcigliotti engaged in the fraud, *inter alia,* "to reap a large monetary gain." (Amended Complaint ¶ 59.) It is alleged on information and belief that:

> Purcigliotti and CCP agreed with the Unions from the outset to request approval from the Board for a fee of 8% of each workers' compensation award or settlement in the hearing loss cases ... which is 2% less than their usual fee, because they knew that under the hearing loss scheme the Defendant Unions would direct all union claimants—ultimately more than 800—to retain CCP.

(*Id.;* Reply Memorandum of Law on Behalf of Purcigliotti and CCP at 7.)

In *Friedman v. Arizona World Nurseries Ltd.,* 730 F.Supp. 521, 532 (S.D.N.Y.1990),

*aff'd,* 927 F.2d 594 (2d Cir.1991), the court found that financial gain from compensation for professional services is not a sufficient motive for purposes of pleading scienter. The court reasoned that to rule otherwise would "effectively abolish the requirement ... of pleading facts which support a strong inference of scienter," against professional defendants. *Id.* (citing *Wilson v. Saintine Exploration and Drilling Corp.,* 872 F.2d 1124 (2d Cir.1989)); *see also DiLeo v. Ernst & Young,* 901 F.2d 624, 629 (7th Cir.) ("[F]ees for two years' audits could not approach the losses E & W would suffer from a perception that it would muffle a client's fraud."), *cert. denied,* 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990).

Plaintiffs distinguish their argument in that they allege compensation on a contingency basis, rather than traditional compensation alleged in the above cases. CCP's fee is contingent on the amount of each workers' compensation award. (Amended Complaint ¶¶ 58, 59.) Therefore, CCP's compensation depended upon the success of the fraudulent scheme and the amount of the award. *See, e.g., Raymark Industries v. Stemple,* 1990 WL 72588, at *13 (D.Kan. May 30, 1990) (attorney's potential financial gain found to present motive to defraud, among other motives). Further, plaintiffs point out that the five-month strike and CCP's long-standing relationship with the Pressmen's Union provided CCP with a clear opportunity to engage in the alleged deceptive scheme. (Amended Complaint ¶¶ 30–32, 48.)

Plaintiffs additionally allege that, in any event, they adequately have pled conscious behavior on behalf of CCP and Purcigliotti. The Amended Complaint contains the following factual allegations to support an inference of fraud:

> Purcigliotti [misrepresented at the Board hearing that everyone in the pressroom wore hearing protectors when the new owner took over the *Daily News* ] at the expense of his client, at the expense of all other claimants who could have received larger awards from the successor employers, and at his own expense insofar as the amount of his legal fee depends on the amount of the award. Purcigliotti did so

because the scheme dictated that the fraudulent claims be pursued against the plaintiffs.

(Amended Complaint ¶ 58);

Using [their experience in workers' compensation law], Purcigliotti and [CCP] first contacted, then acted in concert with, and provided guidance to, the Unions and the Individual Defendants in devising and implementing the fraudulent scheme.

(*Id.* ¶ 48);

[CCP], [and] Purcigliotti ... directed all claimants to Dr. Walter Stingle.

(*Id.* ¶ 61);

[CCP], and Purcigliotti prepared and filed many hundreds of loss of hearing workers' compensation complaints with the New York Workers' Compensation Board ..., although those claims were baseless and their allegations fabricated. In many cases, they knowingly prepared, signed, and filed these fabricated complaints even before the individual claimants had been examined by Dr. Stingle, or even before Dr. Stingle issued an audiological report. In other cases, fabricated complaints were filed even though the individual claimants' responses to the audiograam taken by Dr. Stingle indicated no compensable hearing loss or even though prior or substantially contemporaneous audiograms revealed that the claimants did not have the claimed loss of hearing.

(*Id.* ¶ 5);

In many cases, Purcigliotti and [CCP] prepared the essential allegations of the [claim forms] without any input from the individual claimants.... In other cases, Purcigliotti and [CCP] filed claims on behalf of claimants without any medical evidence supporting the hearing loss claims.

(*Id.* ¶ 52.)

Accepting the factual allegations in the Amended Complaint as true and drawing all inferences in favor of the pleader, in addition to the motive and opportunity asserted by plaintiffs, the Amended Complaint more than sufficiently pleads facts giving rise to a strong inference of fraudulent intent on the part of CCP and Purcigliotti. Accordingly, the Amended Complaint does more than offer conclusory allegations of scienter. The

motion to dismiss the Amended Complaint against CCP and Purcigliotti for failure to comply with Rule 9(b), therefore, is denied.

**B. State Law Fraud Claims**

█ The Union defendants, CCP, Purcigliotti and the Individual defendants argue that the state law fraud claims should be dismissed for failure to plead fraud with particularity. Because this analysis is the same as under the RICO claims, these motions are denied for the reasons stated above.

The Individual Defendants further argue that the Amended Complaint does not allege scienter with sufficient particularity in the state law fraud claims. As to the Individual Defendants, the Amended Complaint separately alleges as to each individual the date and result of the individual's audiological exam, (Amended Complaint ¶¶ 84–668); at least two acts of mail fraud, (*Id.* ¶ 82, Appendix B); and the date the mail fraud occurred and the recipient of the mailing. (*Id.*, Appendix B.) The Amended Complaint additionally alleges that

[t]he accuracy of the [audiogram] depends on the subject's honest response,

(Amended Complaint ¶ 38), and that,

the Individual Defendants manipulated or attempted to manipulate the audiograms by responding dishonestly when presented with audiological tones. The Individual defendants engaged in this conduct with the specific intent to attain an artificially inflated hearing loss report and thus a fraudulent hearing loss award,

(*Id.*, at ¶ 39), and that,

the Individual Defendants took part in discussions between and among themselves and, on information and belief, with the defendant Unions.... Through these discussions, Individual Defendants were referred to [CCP] for the filing and prosecution of the fabricated hearing loss claims, and to Dr. Stingle for the necessary audiological exam;

(*id.* ¶ 37), and that

every Individual defendant went to and engaged CCP/Purcigliotti and Stingle as directed....

(*Id.* at 3, 4.)

Accepting all allegations as true, I find that these factual allegations supply a suffi-

cient basis from which to infer scienter on behalf of the Individual defendants, including adequate allegations of motive and opportunity and conscious behavior. *See Ouaknine,* 897 F.2d at 80. Moreover, the allegations upon belief are substantiated satisfactorily by the detailed factual allegations. *See DiVittorio,* 822 F.2d at 1248. Therefore, the motions of the Union defendants, CCP, Purcigliotti and the Individual defendants to dismiss the state law fraud claims for failure to comply with Rule 9(b) are denied.

## III. Immunity

### A. CCP, Purcigliotti and the Individual Defendants

■ The Individual defendants, CCP and Purcigliotti assert that the filing and processing of workers' compensation claims is protected conduct and therefore cannot constitute predicate acts under RICO. These defendants further argue that to allow such conduct to constitute the predicate act would circumvent the purposes of the anti-retaliation provision in the Workers' Compensation Law, N.Y.Work.Comp.Law § 120,[9] and "chill" filings with the Board. Plaintiffs contend, however, that the defendants' acts of mail fraud, and not the filing and prosecution of claims, are alleged to be the predicate acts under RICO. (Amended Complaint ¶¶ 81–82, 683.) Plaintiffs additionally argue that, in any event, under WCL § 120 they are no longer the employer and they have neither discharged nor discriminated against any (former) employee for bringing a workers' compensation claim.

In the Amended Complaint plaintiffs allege that defendants' acts of mail fraud, detailed at Appendix B of the Amended Complaint, constitute the predicate acts under RICO (Amended Complaint ¶ 674 (alleging that "commission of thousands of acts of mail fraud" constitutes unlawful acts forming the "pattern of racketeering activity").) As stated above, a violation of the federal mail fraud statute, 18 U.S.C. § 1341, constitutes "racketeering activity." *McLaughlin,* 962 F.2d at 190.

■ Defendants offer no support for their proposition that a federal mail fraud violation in the context of a workers' compensation proceeding is protected activity and not actionable in federal court. Moreover, plaintiffs' action would come under the exception provided in Section 120 of the Workers' Compensation Law, since a "valid reason" for the action is alleged to exist. Finding that the Workers' Compensation Law specifically does not prohibit an employer from basing a federal cause of action against an employee on alleged acts of mail fraud committed in the context of a workers' compensation claim,[10] and finding such an extension of the Workers' Compensation statute to be inappropriate, I reject this argument of the Individual defendants, CCP and Purcigliotti.

### B. Stingle

■ Relying on *Tolisano v. Texon,* 75 N.Y.2d 732, 551 N.Y.S.2d 197, 550 N.E.2d 450 (1989), Stingle argues that he cannot be liable for his testimony or the reports on which this testimony is based because he is absolutely immune under the witness immunity doctrine. Plaintiffs, on the other hand, rely on a recent Second Circuit case, *Dory v. Ryan,* 25 F.3d 81 (2d Cir.1994), which holds that absolute immunity does not apply to alleged conspiracies to present false testimony. In *Tolisano,* 551 N.Y.S.2d 197, 550 N.E.2d 450, the New York Court of Appeals

---

**9.** WCL § 120 provides:

It shall be unlawful for any employer ... to discharge or in any other manner discriminate against an employee as to his or her employment because such employee has claimed or attempted to claim compensation from such employer, or because he or she has testified or is about to testify in a proceeding under this chapter and no other valid reason is shown to exist for such action by the employer.

**10.** I also find persuasive plaintiffs' argument that a state statute cannot preempt enforcement of a federal statute. *See, e.g., Griffith v. Bank of New York,* 147 F.2d 899, 904 (2d Cir.), *cert. denied,* 325 U.S. 874, 65 S.Ct. 1414, 89 L.Ed. 1992 (1945) (state statute cannot limit the jurisdiction of federal court); *Devany v. County of Nassau,* No. 88–0657, 1989 WL 18748, at *5 (E.D.N.Y. Feb. 16) (state statute cannot preclude a claimant from filing a federal civil rights claim because state statutes cannot limit the jurisdiction of federal courts), *aff'd,* 888 F.2d 125 (2d Cir.1989).

reversed the decision of the lower court for the reasons stated in the dissent to the lower court opinion. That dissent noted that a physician witness could not be held liable for his opinion testimony or the examination and report which formed the bases for the opinion because the absolute witness privilege applied. *See Tolisano v. Texon,* 144 A.D.2d 267, 533 N.Y.S.2d 874, 877 (1st Dep't 1988). The dissent also recognized, however, that there are exceptions to this privilege, as, for example, when perjured testimony is "the means to accomplishing a larger fraudulent scheme." *Id.* Similarly, in *Dory,* 25 F.3d at 83, the Second Circuit explained that witnesses are not immune where there is an alleged conspiracy to present false testimony.

In the instant case, the Amended Complaint alleges that Dr. Stingle submitted false audiograms, reports and testimony as a part of a large scheme to defraud plaintiffs. (Amended Complaint ¶¶ 25, 62, 63, 68.) Therefore, accepting, as I must, the allegations of the Amended Complaint as true, Stingle's motion to dismiss on the basis of absolute immunity is denied. *See Tolisano,* 533 N.Y.S.2d at 877; *Dory,* 25 F.3d at 83.

IV.  Failure to State a Claim under RICO

■ In deciding a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the factual allegations of the complaint must be accepted as true. *See, e.g., Square D Co. v. Niagara Frontier Tariff Bureau,* 476 U.S. 409, 411, 106 S.Ct. 1922, 1923–24, 90 L.Ed.2d 413 (1986); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In considering such motions, the complaint shall be read liberally, drawing all inferences in favor of the pleader. *See Conley,* 355 U.S. at 45–46, 78 S.Ct. at 101–02. Indeed, the motion to dismiss should be denied "unless it appears to a certainty that a plaintiff can prove no set of facts entitling him to relief." *Ryder Energy Dist. Corp. v. Merrill Lynch Commodities,* 748 F.2d 774, 779 (2d Cir.1984).

A.  Pattern

■ The Individual defendants argue that the Amended Complaint fails to allege a "pattern of racketeering activity" as required under § 1962(c). The standard for alleging a pattern was set out by the Supreme Court in *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). To satisfy RICO's pattern requirement, a complaint must allege that the predicate acts are related, "*and* that they amount to or pose a threat of continued criminal activity." *Id.* at 239, 109 S.Ct. at 2900 (emphasis in original). To establish relatedness, a complaint must allege that the predicate acts "'have the same or similar purposes, results, participants, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Id.* at 240, 109 S.Ct. at 2901 (quoting 18 U.S.C. § 3575(e)). The Court of Appeals has held that relatedness may be shown by "temporal proximity, or common goals, or similarity of methods, or repetitions." *United States v. Indelicato,* 865 F.2d 1370, 1382 (2d Cir.) (*en banc*), *cert. denied,* 493 U.S. 811, 110 S.Ct. 56, 107 L.Ed.2d 24 (1989).

■ In this case, the Amended Complaint alleges that defendants (a) committed thousands of acts of mail fraud, (b) that each defendant committed at least two of these acts, (c) as part of the criminal association effectuating the fraudulent scheme involving all defendants. (Amended Complaint ¶¶ 80, 82–83.) Therefore, similar purpose, results, and method, as well as a common victim are all alleged. Accepting the allegations as true, there is no question that the Amended Complaint in this action meets the relatedness requirement of RICO. *See, e.g., H.J. Inc.,* 492 U.S. 229, 109 S.Ct. 2893 (predicate acts of bribery related by a common purpose—to influence public utility commissioners); *Beauford v. Helmsley,* 865 F.2d 1386, 1392 (2d Cir.) (thousands of acts of mail fraud had necessary relatedness where made to same persons and had same goal), *vacated and remanded for further consideration in light of H.J. Inc.,* 492 U.S. 229, 109 S.Ct. 2893 (1989), *original decision adhered to,* 893 F.2d 1433 (2d Cir.), *cert. denied,* 493 U.S. 992, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989).

■ The tougher test, however, is whether the Amended Complaint sufficiently alleg-

es continuity. Under *H.J. Inc.,* 492 U.S. 229, 109 S.Ct. 2893 " 'continuity' is both a closed- and open-ended concept" and may refer to "a closed period of repeated conduct." *Id.* at 241, 109 S.Ct. at 2902. Continuity over a closed period may be demonstrated by alleging "a series of related predicates extending over a substantial period of time." *Id.* The Court of Appeals noted in *Beauford,* 865 F.2d at 1391, that even where "but one scheme" is alleged, a RICO pattern may still exist.

■ As stated above, the Amended Complaint alleges thousands of acts of mail fraud, an activity that "began no later than March 1991 [and] has continued since that time and through the present, and threatens to continue into the future." (Amended Complaint ¶ 683.) The fraudulent acts are alleged to have furthered the overall scheme to defraud the plaintiffs, *(id.),* and therefore are not isolated or sporadic events. *See, e.g., Com-Tech Assoc. v. Computer Assoc. Int'l,* 753 F.Supp. 1078, 1091 (E.D.N.Y.1990) (single overall scheme with single victim sufficient so long as predicate acts are related and sufficiently continuous), *aff'd,* 938 F.2d 1574 (2d Cir.1991). Plaintiffs' allegations of thousands of related acts of mail fraud occurring over a three year period, which are alleged to continue to occur, are sufficient to satisfy RICO's pattern requirement.

### B. Operation or Management of the RICO Enterprise

Under the RICO statute, an enterprise is defined as "any ... individual, partnership, ... or other legal entity ... or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). In *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), the Supreme Court stated that a RICO enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.* at 583, 101 S.Ct. at 2528.

In this case, the Amended Complaint alleges four enterprises: (i) association-in-fact of all defendants, (Amended Complaint ¶ 672); (ii) association-in-fact of CCP, Purcigliotti and Stingle ("professional enterprise"), *(id.* ¶ 681); (iii) CCP, *(id.* ¶ 691); and, (iv) Dr.

Walter Stingle, P.C. *(id.* ¶ 700.) The Union defendants assert that the Amended Complaint fails to allege association-in-fact enterprises because it lacks a sufficient factual basis to suggest an ongoing concern. All defendants additionally argue that the Amended Complaint does not allege sufficiently their operation or management of any of the four enterprises.

#### 1. Association-in-Fact Enterprise

■ The Court of Appeals instructed in *United States v. Coonan,* 938 F.2d 1553 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1486, 117 L.Ed.2d 628 (1992) (quoting *United States v. Bagaric,* 706 F.2d 42, 55 (2d Cir.), *cert. denied,* 464 U.S. 840, 104 S.Ct. 133, 78 L.Ed.2d 128 (1983)), that "the existence of an association-in-fact is oftentimes more readily proven by 'what it *does,* rather than by abstract analysis of its structure.' " *Id.* at 1550. Furthermore, proof used to establish a pattern of predicate racketeering acts may be relied on to demonstrate the existence of the enterprise. *See Coonan,* 938 F.2d at 1560 (citing *United States v. Indelicato,* 865 F.2d 1370, 1383–84 (2d Cir.) *(en banc ), cert. denied,* 493 U.S. 811, 110 S.Ct. 56, 107 L.Ed.2d 24 (1989)). In the context of a motion to dismiss, and for the same reasons that I found in part IVA above that a sufficient pattern is alleged, the Union defendants' motion to dismiss on the grounds that the Amended Complaint fails sufficiently to allege association-in-fact enterprises is denied.

#### 2. Operation or Management

■ In *Reves v. Ernst & Young,* —— U.S. ——, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), the Supreme Court addressed the question of the meaning of the terms "conduct or participate" in the "conduct" of a RICO enterprise's affairs under § 1962(c). The Court held that the defendant "must have some part in directing [the] affairs" of the alleged enterprise. *Id.* —— U.S. at ——, 113 S.Ct. at 1170. The Court adopted an "operation or management test," whereby one will not be liable under § 1962(c) "unless one has participated in the operation or management of the enterprise itself." *Id.* —— U.S. at ——, 113 S.Ct. at 1172. Furthermore, the Court ex-

plained that this level of participation will not exclude from liability low-level participants "who are under the direction of upper management." *Id.* —— U.S. at ——, 113 S.Ct. at 1173. Accordingly, under *Reves,* mere participation in the affairs is not enough—there must be allegations that defendants have "some part in *directing* those affairs." *Id.* —— U.S. at ——, 113 S.Ct. at 1170 (emphasis in original.)

### Dr. Stingle

■■■ Aside from the general allegations that "the defendants conceived of and implemented" the scheme, including "coordinat[ing] and orchestrat[ing]" the filing and prosecution of false individual workers' compensation claims (Amended Complaint, ¶¶ 2–3), Stingle's individual participation in the scheme is laid out in paragraphs 60–68 of the Amended Complaint. The extent of his role is summarized as follows: performing the audiograms, taking no steps to ensure accuracy, falsely certifying the audiograms, and directing a copy of his conclusions to CCP for transmission to the Board. (Amended Complaint ¶¶ 62–67.)

As to the association-in-fact enterprise of all defendants and the professional enterprise, the Amended Complaint also alleges:

> Purcigliotti, CC & P, the Individual Defendants, and Stingle, among other things described above, further directed the Enterprise's affairs by knowingly framing the respective fraudulent C–3's and false medical reports in a manner intended to render Tribune and New York News with liability for those claims without regard to the truth.

(Amended Complaint ¶¶ 673, 682.)

As to the Stingle enterprise, the Amended Complaint alleges:

> Stingle is the sole shareholder of the Stingle Enterprise, but in operating this professional corporation has retained numerous employees, including nurses, technicians, and other support staff personnel. Stingle has operated and managed the Stingle Enterprise as described in detail in paragraphs 1 through 668 above. Among other things described above, Stingle issued false and misleading medical reports in hundreds of workers' compensation claims involving the Individual Defendants and in furtherance of the unlawful scheme.

(Amended Complaint ¶ 701.) Stingle is not alleged to have conducted or participated in the conduct of the CCP enterprise but rather to be liable through that enterprise by aiding and abetting. (Amended Complaint ¶ 694.)

*Napoli v. United States,* 32 F.3d 31 (2d Cir.1994), involved a law firm that pursued counterfeit claims and used false witnesses in personal injury trials. The defendants were found to have bribed witnesses and instructed witnesses to testify falsely. The Court of Appeals found that the defendants, who were attorneys in the law firm enterprise, "played some part in directing the affairs of the charged enterprise" where they "participated in the core activities that constituted the affairs of the [law firm enterprise], namely, trying cases and obtaining settlements." *Id.* at 36. The court found that as the attorneys "with primary responsibility for the actual litigation of lawsuits," the defendants "exercised a significant degree of direction over the affairs of the enterprise." *Id.* Accordingly, the jury verdict against them was allowed to stand. *Id.*

Likewise, Stingle "participated in the core activities that constituted the affairs" of the enterprises by performing inaccurate audiograms and falsely certifying these audiograms. *See id.* Stingle had "primary responsibility" for an integral part of all of the enterprises. Therefore, I am constrained under *Napoli* to find that the Amended Complaint sufficiently alleges that Stingle took part in the "operation or management" of the enterprises.[11] *See id.*

---

11. *But see, Biofeedtrac v. Kolinor Optical Enterprises,* 832 F.Supp. 585, 591 (E.D.N.Y.1993) (attorney who allegedly had known of fraud, assisted in concealing fraud, and actively had participated in the scheme in various ways not liable under RICO because he had not participated in the decision-making of enterprise); *Morin v. Tru-*

pin, 835 F.Supp. 126, 135 (S.D.N.Y.1993) (where defendants participated in the operation of the enterprise by drafting and mailing the fraudulent documents and directing principals in the enterprise to sign the documents, court held that this participation fell far short of the allegations of operation required under *Reves* ); *Strong & Fish-*

### Individual Defendants

The Individual defendants are alleged to have participated in the four enterprises by fraudulently responding to the audiological examinations and filing fraudulent hearing loss claims with the Board. (Amended Complaint ¶¶ 84–668.) It also is alleged that the Individuals "took part in discussions between and among themselves" which led them to CCP for filing these claims. (*Id.* ¶ 37.) The Amended Complaint also alleges that, in order to implement the fraudulent scheme, CCP, Purcigliotti and the Individual defendants directed all claimants to Dr. Stingle. (*Id.* ¶ 61.) It is alleged on information and belief that during discussions among themselves and with CCP, the Individual defendants learned that to succeed on their claims they would have to manipulate the results of the audiological examinations. (*Id.* ¶ 38.) Finally, it is alleged that CCP and Purcigliotti contacted and provided guidance to the Individual defendants in implementing the scheme. (*Id.* ¶ 48.)

■ Consequently, unlike the allegations concerning Stingle, the Individual defendants are alleged to have operated the relevant enterprises "under the direction of" the alleged decision-makers of the enterprises. *See Reves,* —— U.S. at ——, 113 S.Ct. at 1173. Moreover, the allegations upon belief are uniquely within the defendants' own knowledge, and the Amended Complaint contains sufficient facts substantiating these allegations. *DiVittorio,* 822 F.2d at 1248. At this stage of the pleading and accepting all allegations as true, I find that the Amended Complaint sufficiently alleges the participation of the Individual defendants in the conduct of the relevant enterprises' affairs. *See, e.g., Friedman v. Hartmann,* No. 91–1523, 1994 WL 97104, at *4 (S.D.N.Y. March 23, 1994) (complaint sufficiently alleged conduct of defendant in the enterprise's affairs at motion to dismiss stage).

### CCP and Purcigliotti

■ The Amended Complaint alleges the following: that CCP and Purcigliotti participated in the enterprises by contacting and providing guidance to the other members in devising and implementing the scheme, (Amended Complaint ¶ 48); virtually every claim filed by CCP on behalf of the Individual defendants contained identical allegations of occupational hearing loss, (*id.* ¶ 50); in many cases CCP prepared the claims without input from the claimants, (*id.* ¶ 52); and upon information and belief, the Individual defendants learned of the need to falsify the responses to the audiograms as a result of discussions with Purcigliotti and CCP. (*Id.* ¶ 38.)

Plaintiffs sufficiently have alleged that CCP and Purcigliotti helped devise the fraudulent scheme, played an integral role in managing the scheme and directed others to act in furtherance of the scheme. As with the Individual defendants, the allegations upon belief are substantiated sufficiently at this stage. Because it is alleged that CCP and Purcigliotti had a role in the "conception, creation [and] execution" of the fraudulent scheme, *Azrielli v. Cohen Law Offices,* 21

---

*er, Ltd. v. Maxima Leather,* No. 91–1779, 1993 WL 277205 (S.D.N.Y. July 19, 1993) (despite defendant's "substantial persuasive power" to influence the enterprise, not enough to demonstrate an ability to conduct the affairs of the enterprise); *Amalgamated Bank of New York v. Marsh,* 823 F.Supp. 209 (S.D.N.Y.1993) (defendant who received false checks and cashed them with knowledge that they were fraudulently obtained by other defendant did not participate in the conduct of the enterprise's affairs); *United States v. Altman,* 820 F.Supp. 794 (S.D.N.Y.1993) (defendant charged with looting an estate over which he was executor did not participate in the operation or management of enterprise).

It is important to note that plaintiffs' allegation of association-in-fact enterprises, which lack a traditional organizational structure, does not re-

lieve them of the requirement of alleging each defendant's role in the operation or management of the enterprise. Contrary to plaintiffs' argument, all members of an association-in-fact are not "insiders" in the context of *Reves,* so that operation or management need not be demonstrated. To so hold would render *Reves* ineffective as all RICO complaints could simply allege association-in-fact enterprises. Likewise, plaintiffs may not shortcut the operation or management requirement by alleging the Stingle Enterprise. Naming an enterprise after a defendant does not satisfy the operation or management test. To allow this argument would also nullify *Reves.* However, the allegations of Stingle's operation or management for the professional enterprise also support the association-in-fact and Stingle enterprises.

F.3d 512, 521 (2d Cir.1994), CCP's and Purcigliotti's motions to dismiss on this ground are denied.

### The Union Defendants

The Amended Complaint alleges as to the Union defendants:

> The Pressman's Union, the Drivers' Union, and the Mailers' Union (collectively, the 'Defendant Unions') participated in the development and implementation of the fraudulent scheme with CC & P, Purcigliotti, and the Individual Defendants in a number of ways. On information and belief, the Defendant Unions were responsible for coordinating the scheme by informing individual claimants that the Unions were involved in a concerted action against plaintiffs; by assuring that their members participated in the scheme by directing them to file claims against New York News, whether they had a valid claim against New York News or not; by directing their members and former New York News employees to CC & P and Purcigliotti to carry out the scheme; by contacting individuals no longer working at the *Daily News* by letter and/or by telephone and directing them to retain CC & P to file hearing loss claims against New York News, whether they had a valid claim against New York News or not; by acting in concert with CC & P and Purcigliotti in the attempt to render New York News liable for these hearing loss claims; and by acting as the clients to whom Purcigliotti and CC & P ultimately reported in matters affecting the filing, prosecution, and resolution of the individual workers' compensation claims.

(Amended Complaint ¶ 43.) The Amended Complaint also contains various allegations that each Union also participated in different ways. (*Id.* ¶¶ 44–46.) As set forth in part A1 above, the allegations on information and belief are supported sufficiently by factual allegations to be considered with respect to Union defendants' Rule 9(b) arguments. For those same reasons, those allegations also will be considered in connection with the Union defendants' argument that their operation or management of the association-in-fact enterprise has not been pleaded adequately.

Taking the allegations of the Amended Complaint as true, they sufficiently allege the Union defendants' operation or management of the association-in-fact enterprise under *Reves*. Indeed, the Amended Complaint asserts that the Union defendants played a management role in that they "participated in the development and implementation of the fraudulent scheme," and "coordinated the scheme" by contacting their members, informing them of the concerted action and directed them to take certain actions to carry out the scheme. Accordingly, the Union defendants' motion to dismiss on this ground is denied.

### C. Causation

Stingle and the Unions argue that the Amended Complaint fails to allege an injury "by reason of" the RICO violation because plaintiffs could not have relied justifiably on defendants' representations. CCP and Purcigliotti assert that, with respect to the pending cases before the Board, no injury has yet occurred and, therefore, the Amended Complaint fails to allege injury "by reason of" a RICO violation. In order to plead a cause of action under RICO, a complaint must allege proximate cause, that is, that the predicate acts were "a substantial factor in the sequence of responsible causation" and that "the injury is reasonably foreseeable or anticipated as a natural consequence." *Hecht v. Commerce Clearing House,* 897 F.2d 21, 23–24 (2d Cir.1990). Where the alleged predicate act is mail fraud, the Second Circuit has held that, to establish the required causal connection, the plaintiff must allege that defendants' misrepresentations were relied upon. *See Metromedia Co. v. Fugazy,* 983 F.2d 350, 366 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993).

In this case, the defendants' argument focuses on whether the plaintiffs justifiably could have relied on defendants' alleged fraudulent hearing loss claims when much of the data now alleged to demonstrate the fraud was in the plaintiffs' possession before they settled the claims. Plaintiffs allege,

however, that after the sale of the *Daily News,* "access to medical files and operating records located at the *Daily News* was curtailed," and "many of the former management personnel ... with personal knowledge of the issues involved in the hearing loss claims, after the sale of the newspaper became employed by other employers across the country." (Amended Complaint ¶ 72.) Plaintiffs also allege that they became aware of the fraud only after certain noise level readings were performed at the plants, after plaintiffs became aware of prior audiograms of claimants taken outside of the workers' compensation proceedings, and after additional testing of claimants was conducted. (*Id.* ¶¶ 74–77.)

■ Accepting the allegations of the Amended Complaint as true, I find that, at this stage of the proceeding, the plaintiffs have pleaded justifiable reliance sufficiently. The remaining question is whether plaintiffs adequately alleged an injury as to those claims currently pending before the Board. Plaintiffs contend that as a result of defendants' alleged fraud, they have incurred the significant medical and legal costs required to defend the claims in front of the Board. Without attempting to rule on the scope of plaintiffs' damages at this stage, expenses of this nature, which foreseeably and directly result from defendants' alleged violative conduct, constitute injury by reason of a RICO violation. Accordingly, the motions of Stingle and the Union defendants on this ground are denied.

### D. Aiding and Abetting

■ All the defendants argue that plaintiffs do not allege adequately aiding and abetting liability. In order to establish a claim for aiding and abetting, a complaint must allege: "(1) the existence of a ... violation by the primary (as opposed to the aiding and abetting) party; (2) 'knowledge' of this violation on the part of the aider and abettor; and (3) 'substantial assistance' by the aider and abettor in the achievement of the primary violation." *IIT v. Cornfeld,* 619 F.2d 909, 922 (2d Cir.1980) (citations omitted). Moreover, the requirements of Rule 9(b) apply to allegations of aiding and abetting

fraud. *See Stander v. Financial Clearing and Servs. Corp.,* 718 F.Supp. 1204, 1210 (S.D.N.Y.1989).

■ As set forth above, I have found that plaintiffs have pleaded adequately a violation by one or more primary parties. As to knowledge, the Amended Complaint alleges that the Union defendants, CC & P and Purcigliotti participated in the development and implementation of the scheme (¶¶ 2, 3, 43, 48, 49), that Stingle, the Union defendants and the Individual defendants conceived of and were aware of the scheme and that Stingle prepared false medical reports in furtherance of the scheme (*Id.* ¶¶ 4, 62–68). Certainly, knowledge of the violation has been adequately alleged as to these defendants.

Finally, as to substantial assistance, the Amended Complaint alleges that the Union defendants took various actions to coordinate the scheme, including directing their members to file claims against the New York News, whether valid or not, and directing them to CCP and Purcigliotti (*Id.* ¶¶ 43–46). It further alleges that CCP and Purcigliotti "provided guidance to the Unions and the Individual defendants in devising and implementing the fraudulent scheme" (*Id.* ¶ 48), including preparing claims forms without guidance from claimants (*Id.* ¶ 52) and misinforming representatives of the New York News as to these matters. Stingle, it is alleged, performed the audiograms himself, falsely certified their accuracy and directed the written reports to CCP and to counsel for the New York News (*Id.* ¶ 2). As to the Individual defendants, they allegedly assisted the scheme by filing the false claims, going to CCP for representation, and by going to Stingle for testing. Again, taking these allegations as true, they more than suffice to allege substantial assistance by these defendants. Therefore, the defendants' motions to dismiss on this ground are denied.

### E. Conspiracy to Violate RICO

■ Stingle, CCP, Purcigliotti and the Individual and Union defendants argue that the Amended Complaint does not allege adequately an agreement, as required to state a claim under 18 U.S.C. § 1962(d). In order to

allege a RICO conspiracy, a complaint must allege that the defendant "wilfully participated in at least two ... of the predicate offenses, that the predicate offenses constituted a pattern of racketeering activity, and that, in addition, the defendant ... conspired to participate in the affairs of [the enterprise] by engaging in the predicate offenses." *United States v. Ruggiero,* 726 F.2d 913, 923 (2d Cir.), *cert. denied,* 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984). The complaint must allege facts from which it can be inferred that defendants consciously agreed to engage in a RICO conspiracy. *See Landy v. Heller, White & Co.,* 783 F.Supp. 125, 132 (S.D.N.Y.1991). A defendant's agreement may be inferred from circumstantial evidence of his status in the enterprise or knowledge of the wrongdoing. *See Morrow v. Black,* 742 F.Supp. 1199, 1208 (E.D.N.Y.1990).

■ The Amended Complaint alleges that each defendant agreed to commit or assist in the commission of at least two predicate acts of mail fraud. As discussed in greater detail above, it is alleged that defendants committed the acts "with the knowledge and intent that such acts were in furtherance of the conspiracy's unlawful goals." (Amended Complaint ¶¶ 678, 688, 697, 706.) As also discussed in greater detail above, the Amended Complaint alleges that Purcigliotti and the Unions conceived of the fraudulent scheme to seek revenge against plaintiffs for the Strike (*Id.* ¶¶ 2, 25, 37, 43, 48); that each Individual defendant was directed to CCP and Purcigliotti for the preparation of the false C–3's, and to Dr. Stingle for the issuance of a false medical report (*Id.* ¶¶ 2, 25, 36, 37, 49); that the Individual defendants retained CCP as directed and that in concert with CCP, Purcigliotti prepared and signed all of the identically worded fraudulent C–3's; and that Stingle knowingly certified fraudulent audiogram results in furtherance of the scheme (*Id.* ¶¶ 36, 37, 50, 84–668). Accepting these allegations as true, they are sufficient

to state a claim under § 1962(d) against each defendant.[12] *See, e.g., Morrow,* 742 F.Supp. at 1208 (plaintiff alleged facts concerning each defendant from which a reasonable trier of fact could find conspiracy to violate RICO statute); *see also Schwartz v. Michaels,* 1992 WL 184527, at *26 (S.D.N.Y. July 23, 1992) (while pleadings under § 1962(c) are analyzed under Rule 9(b), pleadings under § 1962(d) are analyzed pursuant to the more liberal standards of Rule 8(a)); *Patrick Carter Associates v. Rent Stabilization Ass'n,* 781 F.Supp. 207, 216 (S.D.N.Y.1991) (same); *In re Crazy Eddie Securities Litigation,* 747 F.Supp. 850, 863 (E.D.N.Y.1990) (same).

**V. Failure to State a State Law Fraud or Negligent Misrepresentation Claim**

■ Stingle and the Individual defendants argue that the Complaint fails to state a state law fraud claim because it does not allege justifiable reliance. Stingle also argues that the negligent misrepresentation claim should be dismissed on the same basis. In order to state a claim for both common law fraud and negligent misrepresentation, a complaint must allege justifiable reliance. *See, e.g., Demov, Morris, Levin & Shein v. Glantz,* 53 N.Y.2d 553, 444 N.Y.S.2d 55, 57–58, 428 N.E.2d 387, 388–90 (1981) (reliance is an "essential element" of fraud); *Prudential Ins. Co. v. Dewey, Ballantine, Bushby, Palmer & Wood,* 80 N.Y.2d 377, 590 N.Y.S.2d 831, 834, 605 N.E.2d 318, 321 (1992) (reliance is a "critical" element of negligent misrepresentation). For the same reasons stated above in Part IVC, I find that accepting the allegations of the Amended Complaint as true, plaintiffs sufficiently allege justifiable reliance. Accordingly, the motions to dismiss the state law fraud and negligent misrepresentation claims are denied.

**VI. Failure to State a Claim of Unjust Enrichment**

The Union defendants and the Individual defendants argue that the unjust enrichment

---

12. CCP and Purcigliotti assert that a conscious agreement to violate § 1962(d) cannot be stated against them because they "were presumably entitled to rely on their own expert's conclusions as to the hearing loss of each claimant." (CCP Br. at 24–25.) Plaintiffs allege, however, that CCP and Purcigliotti solicited claimants and di-rected them to Stingle for the preparation of false medical reports. CCP and Purcigliotti are not entitled to rely on the medical reports of a co-conspirator with knowledge that such reports are false. *See Raymark Industries, supra,* 1990 WL 72588, at *13–14 (D.Kan. May 30, 1990).

claims should be dismissed because the Amended Complaint fails to allege that either the Unions or those Individual defendants whose claims have not been settled have been enriched. The Individual defendants who have settled their claims assert that the unjust enrichment claim should be dismissed on *res judicata* grounds. This latter argument will be discussed in Part VII below.

■ The Amended Complaint alleges in a conclusory fashion that "[a]s a direct and proximate result of the conduct of [the defendants], ... defendants were unjustly enriched." (Amended Complaint ¶ 723.) In order to state a claim for unjust enrichment, the complaint must allege that the defendant has been enriched at the plaintiff's expense and that the defendant's retention of the benefit would be unjust. *See Van Brunt v. Rauschenberg,* 799 F.Supp. 1467, 1472 (S.D.N.Y.1992). Therefore, it must be alleged that plaintiff conferred a tangible benefit upon the defendant. *See Cunningham v. Merchant–Sterling Corp.,* 155 Misc.2d 226, 587 N.Y.S.2d 492 (1991). Because the Amended Complaint lacks any allegation that either the Unions or the Individual defendants with pending claims were enriched by the scheme, the claim for unjust enrichment against these defendants is dismissed.

## VII. Collateral Estoppel and *Res Judicata*

The Union and Individual defendants argue that plaintiffs are collaterally estopped from relitigating the claims that already have settled before the Board. The Individual defendants additionally argue that the doctrine of *res judicata* should be applied to those claims that already have been settled before the Board.

■ A plaintiff is precluded under the doctrine of collateral estoppel, or "issue preclusion," from relitigating against defendants issues of fact or law that were clearly raised and decided against him or her in a prior proceeding. *See Burgos v. Hopkins,* 14 F.3d 787 (2d Cir.1994). In order for the doctrine to apply, plaintiff must have had a " 'full and fair opportunity to fully litigate the point.' " *Kaufman v. Eli Lilly & Co.,* 65 N.Y.2d 449, 492 N.Y.S.2d 584, 588, 482 N.E.2d 63, 67

(1985) (quoting *Gilberg v. Barbieri,* 53 N.Y.2d 285, 441 N.Y.S.2d 49, 51, 423 N.E.2d 807, 809 (1981)). Therefore, "collateral estoppel effect will only be given to matters 'actually litigated and determined' in a prior action." *Kaufman,* 492 N.Y.S.2d at 589, 482 N.E.2d at 68 (quoting Restatement (Second) of Judgments § 27 and *Koch v. Consolidated Edison Co.,* 62 N.Y.2d 548, 479 N.Y.S.2d 163, 166 n. 2, 468 N.E.2d 1, 3 n. 2 (1984), *cert. denied,* 469 U.S. 1210, 105 S.Ct. 1177, 84 L.Ed.2d 326). An issue is not "actually litigated" if the action was settled by stipulation. *See Kaufman,* 492 N.Y.S.2d at 589, 482 N.E.2d at 68 (citations omitted).

■■ The doctrine of *res judicata* or "claim preclusion," on the other hand, prevents parties to an action, and those in privity with them, from subsequently relitigating any matters that actually were litigated or could have been litigated in the earlier action. *See* N.Y.Jur.2d *Judgments* §§ 320, 397 (1992). Significantly, this bar will not apply where "the initial forum did not have the power to award the full measure of relief sought in the later litigation." *Davidson v. Capuano,* 792 F.2d 275, 278 (2d Cir.1986). New York has adopted the transactional approach to *res judicata,* "barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *Burgos,* 14 F.3d at 790 (citing *Smith v. Russell Sage College,* 54 N.Y.2d 185, 445 N.Y.S.2d 68, 71, 429 N.E.2d 746, 749 (1981)).

■ In this case, therefore, neither issue nor claim preclusion can be applied to the plaintiffs' RICO claims because no issues were "actually litigated" in the settled cases, and the Workers' Compensation Board did not have the power to grant plaintiffs the full measure of relief they may be entitled to in this Court. In addition, as to the unjust enrichment claims, *"res judicata* does not apply if the prior adjudicatory body lacked the subject matter jurisdiction over the claims asserted in the later action." *County of Suffolk v. Long Island Lighting Co.,* 710 F.Supp. 1387, 1392 (E.D.N.Y.1989), *aff'd,* 907 F.2d 1295 (2d Cir.1990) (citations omitted).

Therefore, *res judicata* also will not bar plaintiffs' unjust enrichment claim against the Individual defendants whose claims before the Board settled because the Workers' Compensation Board does not have the jurisdiction to hear a claim for unjust enrichment.

## CONCLUSION

The motions to dismiss of defendants and intervenor on the grounds of abstention are denied. (See Part I.)

The motions to dismiss the RICO claims as to the Union defendants, CCP and Purcigliotti pursuant to Fed.R.Civ.P. 9(b) are denied. (See Part IIA.)

The motions to dismiss the state law fraud claims as to the Union defendants, CCP, Purcigliotti and the Individual defendants pursuant to Fed.R.Civ.P. 9(b) are denied. (See Part IIB.)

The motions to dismiss of CCP, Purcigliotti and the Individual defendants on the ground of immunity are denied. (See Part IIIA.)

The motion to dismiss of Stingle on the ground of immunity is denied. (See Part IIIB.)

The motions of all defendants to dismiss the RICO claims pursuant to Fed.R.Civ.P. 12(b)(6) are denied. (See Part IV.)

The motions of Stingle and the Individual defendants to dismiss the state law fraud and negligent misrepresentation claims are denied. (See Part V.)

The motions of the Union defendants and the Individual defendants to dismiss the unjust enrichment claims as to them are granted. (See Part VI.)

The motions of the Union defendants and the Individual defendants to dismiss on the grounds of collateral estoppel and *res judicata* are denied. (See Part VII.)

SO ORDERED.